[No. 58562-8. En Banc. June 10, 1993.]

*In the Matter of the Personal Restraint of*
KENT GLEN WILLIAMS, *Petitioner.*

*Leta J. Schattauer,* for petitioner.

*Christine O. Gregoire, Attorney General,* and *John M. Jones, Assistant,* for respondent.

UTTER, J. — Kent Williams (Williams) appeals the dismissal of his personal restraint petition by the Court of Appeals. He asserts the method by which the Department of Corrections (Department) calculated his sentence violated its statutory mandate as well as his right to equal protection of the laws under both the federal and state constitutions. Specifically, Williams claims the Department failed to adequately account for "good-time" credits he earned during his presentence incarceration in King County Jail. We reverse and remand.

I

On August 16, 1989, Williams was arrested for first degree murder and held in King County Jail pending his bail hearing. On August 21, his bail was set at $500,000. Apparently, due to his indigence, Williams was unable to post this bail and remained in the county jail pending trial. On February 9 of the next year, Williams was convicted of first degree murder and sentenced to 280 months in prison. This sentence was well within the guidelines established by the Sentencing Reform Act of 1981 (SRA) for Williams' offense. *See* RCW 9.94A.310 *et seq.*

On April 4, 1990, Williams was transferred from the King County Jail to the Washington State Penitentiary in Walla Walla to begin serving his sentence. In the course of that transfer, officials at the county jail provided the Department

with a certification regarding Williams' time served at their facility. This certification indicated only that Williams had been incarcerated for 232 days at King County Jail and had earned 77 days of "good time" as a result. The Department accepted this certification and granted Williams 309 days against his ultimate sentence.

Williams then filed a personal restraint petition with the Court of Appeals, asserting the Department had failed to adequately award good-time credits for his incarceration in King County Jail. The Court of Appeals dismissed Williams' petition. In doing so, the court noted that the 77 days of good time was equal to one-third of the time Williams had spent in the county jail. The court mistakenly concluded Williams had therefore received the statutory maximum good-time allowance and was not entitled to relief. See Order Dismissing Personal Restraint Petition, at 1. After the Court of Appeals dismissed his petition, Williams filed a motion for discretionary review before this court. The court granted review on May 5, 1992.

II

Washington's penal law allows correctional facilities to reduce the sentences of offenders committed to their care by "earned early release time", also known as "good time". *See* RCW 9.94A.150(1).[1] The amount of good time allowed to each offender is to be determined "in accordance with procedures that shall be developed and promulgated by the correctional agency having jurisdiction in which the offender is confined." RCW 9.94A.150(1). In no case, however, "shall the aggregate earned early release time exceed one-third of the total sentence". RCW 9.94A.150(1). Thus, correctional facilities may reduce the sentences of incarcerated offenders by up to one-third of their total sentence imposed. If, for example, an offender is sentenced to 18 years in prison his sen-

---

[1]For convenience, we choose to employ the more familiar term "good time" rather than the statutory term "earned early release". No legal consequences flow from our decision to do so.

tence may eventually be reduced by up to 6 years, one-third of the 18-year sentence imposed.

■ For this case, the critical feature of such a calculation is that it is not based upon the amount of time the offender is *incarcerated*. Instead, the allowable good time is calculated based upon one-third of the *sentence imposed*. In the example used above, an offender who earned his statutory maximum of good time would serve 12 years and receive 6 years of good time to fulfill his 18-year sentence. The 6 years of good time would be one-third of the 18-year sentence imposed, not one-third of the 12 years of incarceration. Graphically:

Notice that while the 6 years good time is equal to one-third of the *sentence imposed*, it is one-half of the *time served*.

This confusion between the sentence imposed and the time served may be the source of the problem in this case. King County Jail certified to the Department that Williams had earned only 77 days of good time. The Court of Appeals determined this amount to be equal to the statutory maximum because 77 days is one-third of the 232 days Williams spent at King County. This calculation was based on the amount of time Williams served, however, and therefore the conclusion that it is equivalent to the statutory maximum is incorrect. At oral argument, the Department conceded that if the county jail had granted the statutory maximum of good time, Williams would have received 116 days of good time instead of the 77 actually certified. The difference in this case is therefore 39 days.

On the record before this court, it is impossible to determine exactly why the King County Jail failed to accord Wil-

liams the statutory maximum of good time for his presentence incarceration. The certification provided by the county jail only indicates the total number of good-time days certified, not the reason for that number. One possible explanation of the gap between the certification and the statutory maximum is simply an error of law on the part of the King County Jail. The county jail may have believed, as the Court of Appeals certainly did, that 77 days represented the statutory maximum. On the other hand, King County Jail may have affirmatively determined Williams' conduct only merited 77 days' credit. On the record before us, it is possible Williams received less than the statutory maximum for prison misconduct, or for some other reason.

### III
### A

The grant of good time is governed by RCW 9.94A.150. At the relevant time, the statute provided:

> (1) . . . the terms of the sentence of an offender committed to a county jail facility, or a correctional facility operated by the department, may be reduced by earned early release time *in accordance with procedures that shall be developed and promulgated by the correctional facility in which the offender is confined.* The earned early release time shall be for good behavior and good performance, as determined by the correctional facility. Any program established pursuant to this section shall allow an offender to earn early release credits for presentence incarceration. *If an offender is transferred from a county jail to the department of corrections, the county jail facility shall certify to the department the amount of time spent in custody at the facility and the amount of earned early release time.*

(Italics ours.) Former RCW 9.94A.150(1). Thus the statute specifically divides authority to grant good time between the county jails and the Department. While an offender is confined in the county jail, his or her award of good time is to be determined in "accordance with procedures . . . developed and promulgated" by the jail. When the offender is confined by the Department, his or her award of good time is to be determined in "accordance with procedures . . . developed and promulgated" by the Department. If an offender is

transferred from the jurisdiction of the county jail to the Department, the Department receives a certification from the county jail regarding the award of good time to that offender.

Williams contends that the Department violated this statutory scheme by refusing to credit him with the statutory maximum of good time for his incarceration in King County Jail. He argues the statute requires the Department to "allow an offender to earn early release time for presentence incarceration." The Department failed to comply with this mandate by relying upon the King County Jail's certification. In support of his claim, Williams relies upon *In re Mota*, 114 Wn.2d 465, 788 P.2d 538 (1990). In that case, this court held equal protection required the Department to grant full good-time credit for presentence incarceration.

Williams' reading of RCW 9.94A.150(1) runs contrary both to the language and the purpose of the statute. As noted above, the statute divides authority over the award of good time between the county jail and the Department. Nothing in its structure or language indicates that the Department is to ignore the certification provided by the county jail and recalculate the award of good time to a transferred offender. Indeed, the statute appears to give the various correctional authorities, both county jails and the state correctional system, plenary authority over good-time awards for offenders under their jurisdiction.

The purpose of the award or denial of good time also belies William's reading of RCW 9.94A.150(1). While this court has in the past recognized that good time may serve important rehabilitative purposes, *State v. Phelan*, 100 Wn.2d 508, 515, 671 P.2d 1212 (1983), we have also recognized its relation to prison discipline. *See Mota*, 114 Wn.2d at 476 (good time may be "a practical solution to the problem of prison discipline and controlling the prison population, and not a means of achieving rehabilitation."). Commentators have agreed that the award or denial of good time serves important disciplinary goals. *See* D. Boerner, *Sentencing in Washington* § 10.11, at 10-9 (1985); J. Jacobs, *Sentencing by Prison Personnel:*

*Good Time*, 30 U.C.L.A. L. Rev. 217, 258 (1982-1983). The disciplinary purpose of good time has also been recognized by the United States Supreme Court in the context of the federal correctional system. *See McGinnis v. Royster*, 410 U.S. 263, 276, 35 L. Ed. 2d 282, 93 S. Ct. 1055 (1973) ("disciplinary purpose" is "important and possibly the 'primary' aim" of good time).[2]

The structure of RCW 9.94A.150(1) reflects the disciplinary role of good time. If a correctional institution is to be able to effectively administer its good-time policies in order to further prison discipline, it must actually have control over the award or denial of good time for offenders under its jurisdiction. Good time would be useless in controlling prison discipline in county jails if offenders knew they would be automatically credited with full good time upon their transfer to the Department. Accordingly, the statute grants control over the award or denial of good time to the institution in which the offender is actually incarcerated.

Despite Williams' contentions, our decision in *In re Mota*, 114 Wn.2d 465, 788 P.2d 538 (1990) does not require the result he seeks. In *Mota*, this court did determine the Department was obligated to credit offenders under its jurisdiction with full good-time credit for presentence incarceration in the county jails. The *Mota* court, however, was faced with a significantly different statutory scheme than the one now before us. When the *Mota* decision was rendered, RCW 9.94A.150(1) provided the Department with the *exclusive* authority to award and credit good time. *Mota*, 114 Wn.2d at 470-71. *Cf. State v. Pepper*, 54 Wn. App. 583, 774 P.2d 557 (1989) (under former statute, only Department of Corrections had authority to grant good-time credit). If the Department had not been required to

---

[2]We note in passing that the California Supreme Court's decision in *People v. Sage*, 26 Cal. 3d 498, 611 P.2d 874, 165 Cal. Rptr. 280 (1980) is not to the contrary. In that case, the California court held equal protection required good-time credit for presentence incarceration for felons because a California statute already provided such credit for misdemeanants. *Sage*, at 507-08. The court did not reject the disciplinary role of good time as such. Instead, it rejected prison discipline as a justification for treating accused felons differently from accused misdemeanants.

grant good time, offenders subject to presentence incarceration would have received no good-time credits at all. Under the statute as amended, however, the county jails are specifically authorized to grant good time. The equal protection concerns that drove our decision in *Mota* are therefore not directly implicated in this case. Indeed, the 1989 amendment which gave the county jails their authority in this regard was most likely designed to respond precisely to the problem posed in *Mota*, if not to the actual *Mota* decision itself. *See* Laws of 1989, ch. 248.[3]

We therefore reject Williams' interpretation of RCW 9.94A.150(1). The Department is not obligated to ignore the certification provided by the county jail and award full good-time credit for presentence incarceration. Each correctional institution is independently responsible for the award or denial of good time to the offenders over which it has jurisdiction. *Cf. In re Schaupp*, 66 Wn. App. 45, 51, 831 P.2d 156 (1992) ("Each correctional agency having had jurisdiction of defendant must determine the amount of earned early release time in accordance with procedures developed and promulgated by that agency.").

B

We are, however, also unable to adopt the interpretation of RCW 9.94A.150(1) offered by the Department. The Department views the statute as establishing a purely passive role for its treatment of the certifications provided by the county jails. It argues it is not statutorily compelled to oversee the county correctional facilities in order to ensure the application of a uniform good-time program throughout the state.

The purpose of statutory construction is, of course, to give content and force to the intent of the Legislature. *State v. Johnson*, 119 Wn.2d 167, 172, 829 P.2d 1082 (1992). When possible, that intent is to be derived initially from the language of the statute itself. *Cossel v. Skagit Cy.*, 119 Wn.2d 434, 436, 834 P.2d 609 (1992); *State v. Reding*, 119

---

[3]This amendment applies to sentences imposed for crimes committed on or after July 1, 1989. Laws of 1989, ch. 248, § 5.

Wn.2d 685, 690, 835 P.2d 1019 (1992). In this case, the statute is in fact silent with respect to the relationship between the Department and the county jails in regard to the certifications. While it does prescribe the *contents* of the required certification, the statute does not indicate the legal *effect* of the certification. One alternative, the one proposed by Williams, is for the Department to completely ignore the certification. For the reasons given above, we have rejected that possibility as inconsistent with the purposes and structure of the statute.

■ A better alternative, one more consistent with the language, structure, and purposes of the statute, is to prohibit the Department from accepting certifications that are based on apparent or manifest errors of law. Under this reading, the county jails retain plenary authority over the grant or denial of good time to offenders within their jurisdiction. The Department is, therefore, entitled to give presumptive legal effect to the certification the county jail provides.[4] The certification does not, however, have legal force if it is based upon an apparent or manifest error of law.

This reading of the statute is implicit in the language of the statute itself. Since the statute prescribes certain standards for the award or denial of good time, a certification in violation of those standards would be presumptively invalid. For example, the statute indicates the award of good time shall be for "good behavior and good performance". If a certification provided by a county jail to the Department indicated that a particular offender had been denied good time on the basis of his political or religious beliefs, such a certification would clearly be invalid. The Department would therefore be acting illegally if it relied upon such a certification.

Our reading is also consistent with the general purposes and structure of the statute. Prison discipline has been recognized as one of the purposes of good time. *In re Mota*, 114

---

[4]We do not reach the question that would be raised if the Department *refused* to give any effect to a particular certification. The only issue before us is whether the Department is *obligated* to give effect to a certification from a county jail.

Wn.2d 465, 476, 788 P.2d 538 (1990). To effectuate this purpose, RCW 9.94A.150(1) divides authority over the grant or denial of good time between the county jails and the Department. Under our reading of the statute, the county jail retains complete control over the good-time credits granted to offenders within its jurisdiction. If its certification meets the legal requirements of the statute, the Department is therefore entitled to accord that certification legal effect. Thus, the County will continue to be able to effectively employ the award or denial of good time as a means of achieving prison discipline.

■ Our reading of the statute also avoids the important equal protection problems the Department's interpretation could raise. It is a general rule that statutes are construed to avoid constitutional difficulties when such construction is consistent with the purposes of the statute. *See State ex rel. Faulk v. CSG Job Ctr.*, 117 Wn.2d 493, 500, 816 P.2d 725 (1991); *In re Chorney*, 64 Wn. App. 469, 477, 825 P.2d 330 (1992). As we recognized in the *Mota* case, significant equal protection concerns are raised by the differential treatment that may be accorded the indigent as a result of his inability to post bail before trial. *Mota*, 114 Wn.2d at 469-70. *See also State v. Phelan*, 100 Wn.2d 508, 513-14, 671 P.2d 1212 (1983).[5] Of course, the very fact of bail and presentence incarceration raises the possibility of disparate treatment based upon wealth. In general, however, the needs of the justice system in assuring the presence of defendants at trial are deemed sufficient to validate such a system. *See Bell v. Wolfish*, 441 U.S. 520, 534, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979); *United States v. Hazzard*, 598 F. Supp. 1442, 1452-53, 75 A.L.R. Fed. 783 (N.D. Ill. 1984). Nevertheless, we should endeavor to minimize this disparate treatment when

---

[5]The potential problems posed by good-time credit for presentence incarceration have been generally recognized. *See, e.g.*, Schornhorst, *Presentence Confinement and the Constitution: The Burial of Dead Time*, 23 Hastings L.J. 1041, 1065 (1972) ("a prisoner held in presentence custody for want of bail suffers further disadvantage unless, after sentence, he is credited with the appropriate good time earned in connection with the presentence custody").

possible. Allowing the Department to give legal force to a certification which is based on an error of law would magnify rather than alleviate disparities in treatment.

We are sensitive, however, to the problems Department oversight of the county jails could create. Accordingly, we emphasize that under the "apparent or manifest error of law" standard the Department is not obligated to review the accuracy of the certifications provided by the county jails. Neither is it required to review and approve the individual good-time policies adopted by the county jails. If a given certification does not contain apparent or manifest errors of law, the Department is entitled to give that certification legal effect.

IV

In disposing of this case, however, we do not directly apply this standard to Williams' certification. As noted above, the record does not reveal whether King County Jail gave Williams 77 days' good time deliberately or whether the jail made the same error as did the Court of Appeals. At oral argument, the Department argued that the most appropriate means by which to resolve this ambiguity would be to remand the case for further investigation.[6] We therefore remand the case to the Court of Appeals for reconsideration of Williams' personal restraint petition in light of our opinion.

We emphasize the limited nature of this disposition. Once the county jail's understanding has been clarified, the Department will be entitled to accept the certification as valid. If Williams is still unsatisfied by his treatment, he may then pursue a remedy either against the county jail or against the Department if appropriate. Our decision should also not be interpreted as creating a right for prisoners to challenge their certifications merely because they were not awarded the statutorily permitted maximum amount of good time. The Department will be entitled to accept all future certifications

---

[6]While counsel for the Department made this argument during discussion of the equal protection aspect of the case, the factual question was the same. Tape of Oral Argument, tape 2, 150-250 (Oct. 15, 1992).

from the county jail (barring other problems), since it will at that point be apprised of the jail's proper understanding of the statute.[7]

Given this disposition of the case, it is unnecessary to reach Williams' equal protection claims under the state or federal constitutions. In particular, we do not consider the equal protection issues that may be raised by the implementation of disparate good-time policies in the several counties.

Accordingly, we remand Williams' personal restraint petition for further proceedings not inconsistent with this opinion.

ANDERSEN, C.J., and DOLLIVER, SMITH, and JOHNSON, JJ., concur.

DURHAM, J. (concurring) — The majority has done a thorough and admirable job in explaining the function and use of "earned early release time", commonly referred to as "good time". *See* RCW 9.94A.150(1). Its explanation of the proper method of calculating good time should alleviate any misconceptions which might exist in the various penal facilities of this state. However, I write separately in order to emphasize the limited function of the majority's "apparent or manifest errors of law" standard.

Under the majority's standard, the Department of Corrections (Department) is entitled to give presumptive legal effect to a county jail's good-time certification so long as it is not based upon an apparent or manifest error of law. Majority, at 664. Good-time certifications from the county jails consist only of "the *amount* of time spent in custody at the [county jail] and the *amount* of earned early release time." (Italics mine.) RCW 9.94A.150(1). *See also* majority, at 659.

---

[7]While this would not necessarily hold true for the other county jails, personal restraint petitions could easily be forestalled by assurances from the county jail to the Department that the permissible statutory maximum was understood. Even if such an assurance were not forthcoming, the Department could argue for dismissal in future cases rather than for remand. Petitioners would then be required to make a showing that the county jail had in fact read the statute incorrectly.

The Department only receives raw numbers, without any explanation of how that number is calculated or why a prisoner did not receive the maximum allowable good time.

With the exception of prisoners incarcerated for certain types of crimes not relevant here, a prisoner's good time cannot exceed one-third of his total sentence. RCW 9.94A-.150(1). While the statute sets out a maximum amount that can be awarded, there is no requirement that this maximum amount actually be awarded. *See* majority, at 661-62. There is also no statutory requirement that the county jails include an explanation of their method of apportioning good time with this certification. In order for the Department to reject a certification, the error of law committed by the county jail must be apparent or manifest upon the face of the certification. Since all the Department receives is a number, this means that it must be apparent or manifest that the number was miscalculated. Therefore, the only conceivable "apparent or manifest error of law" which can be gleaned from the face of the certification is that the county jail *exceeded the statutory maximum*. It should go without saying that if this were to occur, it is incumbent upon the Department to return the certification for recalculation.

In a personal restraint petition, unlike a trial, the burden of proof is on the petitioner to demonstrate that an error has been made. *State v. Kitchen*, 110 Wn.2d 403, 413, 756 P.2d 105 (1988). In the case at hand, there does not appear to have been any showing of an apparent or manifest error. Rather, it is most likely an adventitious accident that Williams' good-time credit equaled exactly one-third of his time spent in the King County Jail.[8] Nonetheless, because we are faced with the unusual situation of both the Department and the petitioner requesting a remand, I concur with the majority's disposition of this case. I would point out, however, that there is no need for a "clarification" of the county jail's understand-

---

[8]As the petitioner's brief itself admits, Williams has consistently lost good-time credit while in the state prison system because of Department of Corrections disciplinary actions due to assault, possession of a dangerous weapon, and other dangerous infractions. Brief of Petitioner, at 3; Brief of Respondent, exhibit 2.

ing of the statute so long as there is no apparent or manifest error of law contained in the certification. *See* majority, at 665-66. Upon remand, dismissal is appropriate so long as Williams does not meet his burden of proving that there was such an error evident on the face of the certification provided to the Department by King County.

BRACHTENBACH and GUY, JJ., concur with DURHAM, J.

Reconsideration denied August 11, 1993.