904 P.2d 722 (1995)
128 Wash.2d 56
In the Matter of the Personal Restraint Petition of James N. FOGLE, Petitioner.
In the Matter of the Personal Restraint Petition of Donald D. MacFARLANE, Petitioner.
No. 62191-8.
Supreme Court of Washington, En Banc.
November 2, 1995.
*724 James N. Fogle, Steilacoom, Pro Se.
Nielsen & Acosta, Eric Nielsen, Seattle, Suzanne L. Elliott, Rita Griffith, Washington Appellate Defenders, Seattle, for Petitioner.
John Ladenburg, Pierce County Prosecutor, Barbara Corey-Boulet, Deputy, Mark VonWahlde, Deputy, Tacoma, Arthur D. Curtis, Clark County Prosecutor, Richard Melnick, Deputy, Vancouver, Christine O. Gregoire, Attorney General, Donna H. Mullen, Asst., Thomas J. Young, Asst., Olympia, for Respondent.
*723 DOLLIVER, Justice.
Following this court's decision in In re Mota, 114 Wash.2d 465, 472, 788 P.2d 538 (1990), holding the Department of Corrections' (DOC) denial of earned early release credit to presentence detainees in county jails violated equal protection, the Legislature amended the sentencing statute to authorize the county jails to establish earned early release credit policies. RCW 9.94A.150(1). Now we are asked to review the constitutionality of those county jail policies: presentence detainees receive earned early release credit, but less than that available under DOC policy. We hold county jail policies setting a maximum earned early release credit lower than the DOC policy are statutorily and constitutionally permissible.
As mandated by Mota, the Legislature requires all prisoners, including those in presentence detention, be eligible for earned early release credit whether held in a DOC facility or a county jail:
Except as otherwise provided for in subsection (2) of this section, the term of the sentence of an offender committed to a correctional facility operated by the department, may be reduced by earned early release time in accordance with procedures that shall be developed and promulgated by the correctional agency having jurisdiction in which the offender is confined. The earned early release time shall be for good behavior and good performance, as determined by the correctional agency having jurisdiction. The correctional agency shall not credit the offender with earned early release credits in advance of the offender actually earning the credits. Any program established pursuant to this section shall allow an offender to earn early release credits for presentence incarceration. If an offender is transferred from a county jail to the department of corrections, the county jail facility shall certify to the department the amount of time spent in custody at the facility and the amount of earned early release time. In the case of an offender convicted of a serious violent offense or a sex offense that is a class A felony committed on or after July 1, 1990, the aggregate earned early release time may not exceed fifteen percent of the sentence. In no other case shall the aggregate earned early release time exceed one-third of the total sentence[.]
RCW 9.94A.150(1).
Pursuant to RCW 9.94A.150(1), the DOC and the county jails have developed the independent credit policies at issue here. The DOC's earned early release credit system, also known as "good-time", consists of two types of credit: good-conduct time and earned time. A prisoner in a state facility earns "good-conduct time" by good behavior at 10 days per 30 days served; generally, the prisoner is presumed to have earned the full good-conduct time available unless the facility specifically deducts for misbehavior. In re Cromeenes, 72 Wash.App. 353, 355, 864 P.2d 423 (1993). The DOC will award an additional 5 days per 30 days served in "earned time" for participation in work, academic, or treatment programs. Cromeenes, 72 Wash.App. at 355, 864 P.2d 423; RCW 9.95.070. The DOC then combines the total good-conduct and earned time, up to one-half of the days served, to determine the final sentence reduction, up to the statutory maximum of one-third of the imposed sentence. In re Williams, 121 Wash.2d 655, 659, 853 P.2d 444 (1993); Cromeenes, 72 Wash.App. at 355, 864 P.2d 423; RCW 9.94A.150(1).
A prisoner denied or unable to pay bail will spend presentence detention in a *725 county jail and then transfer to a DOC facility upon sentencing. In that case, the DOC will reduce the prisoner's sentence not only for earned early release credit accumulated at the DOC facility, but also for day-for-day credit and earned early release credit earned in presentence detention. Williams, 121 Wash.2d at 658-59, 853 P.2d 444; State v. Phelan, 100 Wash.2d 508, 517, 671 P.2d 1212 (1983). Defendant James N. Fogle spent 102 days of presentence detention in the Pierce County Jail on a 60-month sentence, earning 15 days earned early release credit. Defendant Donald D. MacFarlane spent 144 presentence days in the Clark County Jail on concurrent sentences of 72 and 8 months, earning 21 earned early release credit days.
Like the DOC, the Clark and Pierce County Jails use tiered credit systems. The jails' version of good-conduct time is known as "good time", the base award available to all general population prisoners at a maximum 15 percent of the imposed sentence; the jail will deduct any misconduct from that credit. Comparable to the DOC's earned time, the jails' policies permit prisoners to receive additional credit through work programs to achieve a maximum earned early release credit of 30 percent of the imposed sentence at Clark County Jail and 20 percent or 30 percent at Pierce County Jail. Both Fogle and MacFarlane received the maximum 15 percent credit as general population prisoners.
Defendants filed separate personal restraint petitions in the Court of Appeals attacking the county jails' earned early release policies. Denying an equal protection challenge, the Court of Appeals granted Fogle's petition in part on the basis that the Pierce County Jail inaccurately calculated his credit and ordered readjustment to 17 days. This court granted Fogle direct discretionary review and certified MacFarlane's petition, consolidating the cases on review.
Defendants focus on two features of the county jail policies: the denial of the full statutory maximum and the exclusion of most prisoners from the higher credit work programs. Defendants claim the county jails have exceeded their statutory authority by formulating these policies. At the heart of this case, Defendants raise an equal protection challenge against the disparate treatment of presentence detainees. In addition, Defendants claim the policies violate double jeopardy and due process.
I. Statutory Authority for Earned Early Release Credit
Defendants argue RCW 9.94A.150(1) mandates all earned early release credit programs allow every prisoner, except those explicitly excluded as violent or sex offenders, to earn the full statutory maximum credit. Defendants' argument runs contrary to this court's decision in In re Williams, supra, and the Legislature's intent for independent, plenary county jail authority over earned early release policies. See Williams, 121 Wash.2d at 666, 853 P.2d 444.
As here, Williams considered an equal protection challenge to a county jail's certification of less than the statutory maximum for a presentence detainee. Without reaching the equal protection issue, Williams rested on the issue of statutory authority to hold prisoners do not have "a right ... to challenge their [jail] certifications merely because they were not awarded the statutorily permitted maximum amount of good time." Williams, 121 Wash.2d at 666, 853 P.2d 444. Nor does the statute create a right to a specific method of calculation.
We also reject Defendants' interpretation of RCW 9.94A.150(1) as requiring that jails permit all prisoners access to work programs. The clause describing "good behavior and good performance" merely indicates the factors for awarding credit within the provision's overall grant of authority to facilities to create independent policies. Williams, 121 Wash.2d at 661, 853 P.2d 444. We hold the Clark and Pierce County Jails' policies are consistent with the grant of authority in RCW 9.94A.150(1).
II. Equal Protection Analysis
"Equal protection requires that persons similarly situated receive like treatment." Mota, 114 Wash.2d at 473, 788 P.2d 538. Defendants assert the Clark and Pierce County Jails' earned early release policies *726 violate prisoners' equal protection rights under the state and federal constitutions by awarding most prisoners, particularly presentence detainees, only 15 percent credit. Defendants claim the jails' policies result in longer sentences for presentence detainees than for prisoners spending their entire sentences in a DOC facility.
1. Level of Scrutiny
Equal protection analysis generally applies the rational basis test: whether the policy is rationally related to a legitimate state purpose. Mota, 114 Wash.2d at 475, 788 P.2d 538. In Mota, however, this court utilized intermediate scrutiny, holding the state failed to assert a substantial interest in denying presentence detainees any earned early release credit. Mota, 114 Wash.2d at 473, 788 P.2d 538. Defendants urge the court to adopt an intermediate scrutiny standard here.
Intermediate scrutiny is appropriate only where the denial of a liberty interest is due to a semi-suspect classification. Mota, 114 Wash.2d at 474, 788 P.2d 538. The Mota court reasoned the DOC's failure to award good-time credit under the former RCW 9.94A.150(1) to a presentence detainee financially unable to post bail represented discrimination on the basis of wealth. Mota, 114 Wash.2d at 474, 788 P.2d 538. Following Mota, the Court of Appeals has applied rational basis to an equal protection challenge to disparate earned early release policies where the presentence detainee was held without bail: indigency did not serve as the basis for the disparate treatment. Cromeenes, 72 Wash.App. at 357, 864 P.2d 423.
Without disturbing Mota, we note failure to pay set bail does not necessarily represent a wealth-based classification to merit semi-suspect status. The determination of bail may depend on many factors beyond wealth, such as perceived dangerousness and likelihood of flight. See CrR 3.2(b). Moreover, a prisoner may elect not to pay bail for reasons other than financial condition.
In the present case there is some dispute whether Defendants were eligible for bail. In addition, both Defendants were held on separate fugitive warrants, likely to render payment of bail on the primary charge futile. Nonetheless, we will construe the facts in the light most favorable to Defendants and proceed on an intermediate scrutiny standard.
2. Intermediate Scrutiny Analysis
Defendants claim no substantial, or even legitimate state interest is served by the county jails' tiered credit policies awarding only 15 percent credit to most prisoners. Although 30 percent credit is available to county jail prisoners, Defendants submit most inmates, especially presentence detainees, do not achieve work program status. Applying intermediate scrutiny, we hold the state's substantial interest in maintaining prisoner discipline, particularly by preventing flight from prosecution and preserving local control over jails, justifies disparate treatment to overcome Defendants' equal protection challenge.
We first remark, contrary to Defendants' position, the result of the 15 percent award for general population prisoners does not result in longer sentences for presentence detainees. Earned early release credit has no effect on sentencing. The lower award does result in more days served. Had Defendants served their presentence days in a DOC facility they could have potentially earned more credit and ultimately a larger sentence reduction. On good-conduct time alone, Fogle would have been eligible for 34 days, MacFarlane for 48 days. With earned time Fogle might have reached 51 days and MacFarlane 72 days.
Discipline and punishment are the primary purposes of the sentencing statute. Williams, 121 Wash.2d at 662, 853 P.2d 444; Mota, 114 Wash.2d at 475-77, 788 P.2d 538. Limiting access to work programs serves the substantial purposes of punishment and discipline by basing eligibility on the severity of the crime and the prisoner's behavior. See Williams, 121 Wash.2d at 662, 853 P.2d 444. In regard to program participation, presentence detainees are not similarly situated to convicted prisoners in county jail or a DOC facility: the risk of flight from prosecution makes presentence detainees particularly unsuitable for work program *727 assignment. Cromeenes, 72 Wash.App. at 358, 864 P.2d 423. As we explained in Williams:
[T]he very fact of bail and presentence incarceration raises the possibility of disparate treatment based upon wealth. In general, however, the needs of the justice system in assuring the presence of defendants at trial are deemed sufficient to validate such a system....
(Citations omitted.) Williams, 121 Wash.2d at 665, 853 P.2d 444. The tiered system also advances discipline by providing an incentive for county inmates to improve behavior and earn work program participation. Cromeenes, 72 Wash.App. at 357, 864 P.2d 423.
The Legislature authorized independent county jail credit policies in RCW 9.94A.150 in recognition that the statute's disciplinary purpose was better promoted through local control. As this court emphasized in Williams:
If a correctional institution is to be able to effectively administer its good-time policies in order to further prison discipline, it must actually have control over the award or denial of good time for offenders under its jurisdiction. Good time would be useless in controlling prison discipline in county jails if offenders knew they would be automatically credited with full good time upon their transfer to the Department....
Williams, 121 Wash.2d at 662, 853 P.2d 444. The county jails are uniquely situated to determine the best means to control their prisoner populations, particularly presentence detainees presenting special disciplinary concerns not faced by DOC facilities.
III. Double Jeopardy
Defendants maintain the jails' denial of earned early release credit equal to that available from the DOC imposes multiple punishment to violate the prohibition against double jeopardy. As this court noted in State v. Phelan, supra, double jeopardy demands full credit for presentence jail time as well as earned early release time actually earned. Phelan, 100 Wash.2d at 515, 671 P.2d 1212. At the same time, double jeopardy does not mandate earned early release credit for speculative time the prisoner might have earned under a different credit program. Phelan, 100 Wash.2d at 516, 671 P.2d 1212. Reaffirming the Phelan analysis, we hold the disparate earned early release policies here do not result in multiple punishment to trigger double jeopardy protection. See Phelan, 100 Wash.2d at 516, 671 P.2d 1212.
IV. Due Process
Defendants contend the jails violated due process by failing to establish procedures for presentence detainees to earn the statutory maximum earned early release credit. This court has recognized the statutory right to earned early release credit creates a limited liberty interest requiring minimal due process. In re Anderson, 112 Wash.2d 546, 548, 772 P.2d 510 (1989). However, where due process concerns are implicated in an equal protection challenge, the court will generally rest its decision on an equal protection analysis. Mota, 114 Wash.2d at 474 n. 1, 788 P.2d 538. Regardless, the jails here established and observed their written earned early release policy consistent with due process requirements.
DURHAM, C.J., and SMITH, GUY and TALMADGE, JJ., concur.
ALEXANDER, Justice, dissenting.
I dissent because I believe that the equal protection clause of the Fourteenth Amendment to the United States Constitution is offended by a system that awards less of the good behavior component of earned early release credit to an offender who is held in jail pending trial and sentencing on a noncapital felony than it awards to a similarly situated offender who serves his or her entire sentence in a Department of Corrections (DOC) facility.
As the majority points out, this court in In re Mota, 114 Wash.2d 465, 788 P.2d 538 (1990), concluded that the Constitution was violated by a system that completely denied earned early release credit to offenders who awaited trial and sentencing in a county jail, because such a system treated those offenders "differently from those who serve[d] the entire sentence either in county jail or in a *728 state institution." Mota, 114 Wash.2d at 473, 788 P.2d 538. Consistent with Mota, the Legislature amended the statute relating to earned early release credits and required that any such program "shall allow an offender to earn early release credits for presentence incarceration." RCW 9.92.151(1) (as amended by Laws of 1990, ch. 3, § 201). The amendment cured the problem identified in Mota because it mandated that the early release policies of local correctional facilities, including county jails, must apply to persons who spend time in a county jail pending trial and sentencing. The amendment did not, however, resolve the equal protection challenge that is presented by this case.
Although the majority somewhat grudgingly concedes that the equal protection challenge presented by this case is wealth based, it appears to suggest that there is some question whether these Petitioners spent time in a county jail because of their financial inability to post bail. I recognize that the record we have been furnished is not particularly clear as to whether either Fogle or MacFarlane was detained in jail prior to trial and sentencing because of a financial inability to post bail, or for some other reason. The majority indicates that there was "some dispute whether Defendants were eligible for bail," noting that "both [Fogle and MacFarlane] were held on separate fugitive warrants" pending trial. (Majority Op. at 726.) Whether, as the majority suggests, the existence of such warrants was "likely to render payment of bail on the primary charge futile," however, is a matter of conjecture. (Majority Op. at 726.) In the absence of evidence to the contrary, it is reasonable to assume that these two trial courts would have had to set bail in some amount or would have had to impose some combination of conditions other than detention in order to assure these Defendants' appearance at trial. See CrR 3.2(a) ("The court shall impose the least restrictive ... conditions that will reasonably assure that the accused will be present for later hearings...."). Significantly, there is nothing in the record to indicate that any court had denied bail to either Fogle or MacFarlane. On the contrary, the record contains a teletype warrant, perhaps one of the fugitive warrants referenced by the majority, indicating that, with respect to a charge against MacFarlane in Pierce County Superior Court, "cash or surety bond [is] to be approved by court." (Mot. to Supplement the R. at Ex. A.)
Insofar as the Petitioners' ability to post bail is concerned, both assert that they were financially unable to do so. In his Motion for Discretionary Review, Fogle contends that he was detained in jail pending trial "solely on [the] basis of his financial ability to post bail." (Mot. for Discretionary Review at 2.) Similarly, in a Reply Brief filed with the Court of Appeals, Division Two, MacFarlane, who appeared without benefit of counsel, summarized his position as follows:
After all is said and done, the discrimination in the present case is fueled by a perverse reading of the statute leveled against those too poor to raise bail and unable to obtain release on personal recognizance that is the real rub in Mr. MacFarlane[']s case.
(Reply to Prosecutor's Resp. at 13.) In short, the State has not demonstrated that the Petitioners' failure to post bail was for reasons other than financial inability. I am satisfied, therefore, that the Petitioners have properly raised an important equal protection question: Were they treated differently from other similarly situated offenders simply because of their indigency?
Putting aside for the moment any speculation about the reason for Fogle's and MacFarlane's inability to post bail, it is certain that because bail was not posted, these Petitioners each became subject to the earned early release credit policies of the county for the time spent in county jail pending trial and sentencing.[1] Pursuant to *729 those policies, the counties certified to DOC, and DOC awarded Fogle and MacFarlane good conduct time credit equal to fifteen percent of the time they each served in a county jail, the maximum credit for good behavior permitted under the counties' policies.[2] Importantly, as the majority concedes, had Fogle and MacFarlane not served their presentence time in a county jail, each would have been eligible to receive more credit for good behavior against his sentence than was actually received. In addition, under the policies of each of the two counties, the Petitioners were ineligible to participate in any program that would allow them to accumulate "earned time" for good performance during that time. Consequently, they did not receive any earned early release credit for good performance while awaiting trial and sentencing. In sum, the application of these policies in Fogle's and MacFarlane's cases resulted in the Petitioners receiving less total earned early release credits against their sentences than they would have received had they served their entire sentence in a state correctional facility.[3]
By this dissent, I do not mean to suggest that a county violates the equal protection provisions of the United States Constitution when it withholds good conduct credit from offenders who have not exhibited good behavior while detained in jail. Indeed, county correctional facility managers must have the ultimate discretion to determine whether an inmate has exhibited good behavior and/or good performance. Furthermore, I concur with the majority, insofar as it concludes that the policies of the counties that restrict eligibility for the good performance component of earned early release time credit for participation in work release or academic programs survive an equal protection challenge. My disagreement with the majority relates only to the manner in which good behavior credit was applied to the sentences imposed by the trial court on Fogle and MacFarlane, two offenders who were determined by county jail officials to have exhibited good behavior while they were detained in jail pending trial and sentencing. In my judgment, the manner in which credit for good behavior was applied by the DOC and Clark and Pierce counties implicates the equal protection clause of the federal Constitution because the counties and state had no legitimate reason, such as a lack of good conduct on the part of the Petitioners, to award Fogle and MacFarlane less good time credit than they would have been awarded had they served their entire sentences in a DOC facility.
Respondent Clark County asserts that the Petitioners' claim that the county policies are unconstitutional is misplaced because "[t]hough Clark County awards fifteen percent (15%) good time credit [for good behavior], the Department of Corrections can award the defendant a higher percentage so that the aggregate sentence of good time is equal to [the statutory maximum] one-third." (Resp't br. at 6) (citing RCW 9.94A.150). I recognize that the Petitioners generally focus their claims on the policies of the counties. However, because these Petitioners did not have their good behavior credit reduced for misconduct, their complaints with respect to crediting of their good behavior time necessarily relate to the flaws in the entire system of awarding, certifying, and crediting time against the sentences of offenders who are detained in a county facility prior to serving a sentence in a state correctional facility. Whether it is the county or the state that erroneously awards, certifies, or credits time for good behavior is of little moment to an offender whose legitimate liberty interest, protected by the equal protection clause of *730 the United States Constitution, is violated by this system.
As the majority observes, the equal protection clause of the United States Constitution requires the government to treat persons who are similarly situated in a like manner. See U.S. Const. amend. XIV, § 1. The majority also recognizes that because the central issue in the case concerns an alleged denial of a liberty interest based on wealth, a semi-suspect classification, the appropriate standard of review of the policies of the counties is intermediate scrutiny. (Majority Op. at 726.) The test under this level of scrutiny is whether the disparate treatment "may fairly be viewed as furthering a substantial interest of the State." Plyler v. Doe, 457 U.S. 202, 217-18, 102 S.Ct. 2382, 2395, 72 L.Ed.2d 786, reh'g denied, 458 U.S. 1131, 103 S.Ct. 14, 73 L.Ed.2d 1401 (1992) (footnote omitted).
The class of persons subjected to disparate treatment in this case is persons who are sentenced to state correctional facilities for noncapital felonies.[4] While all members of this class who are not released from jail on their personal recognizance pending trial have the right to obtain their release by posting bail,[5] some members of that class have sufficient funds to post bail and others do not. The portion of the class that is unable to post bail is, as we have already observed, subject to the earned early release credit policies of the county. Those members of the class that obtain release on bail, but who are later convicted and sentenced to prison, are subject to the more generous policies of DOC regarding good behavior credit, and thus become eligible to accumulate more earned early release credit for good behavior. Ultimately, the latter group of individuals serve less of their sentences than those who were not able to post bail. The result is that the less wealthy members of the class fare worse than their more well-heeled classmates.
The majority suggests that a person's failure to post bail may not always be driven by financial reasons. While in a theoretical sense that may be true, in a practical sense it is still a fact of life that most persons charged with a crime who have the wherewithal to post bail will do so. In this case, moreover, the Petitioners said that they would have posted bail had they been able to do so.
The majority also holds that "the state's substantial interest in maintaining prisoner discipline, particularly by preventing flight from prosecution and preserving local control over jails, justifies disparate treatment to overcome [the Petitioners'] equal protection challenge" even under a intermediate scrutiny analysis. (Majority Op. at 726.) I fail to see how awarding a person who makes bail a more generous earned release credit than one who does not have any effect on jail discipline. That conclusion seems obvious because the individuals who post bail and obtain their release from jail are not subject to jail discipline. Furthermore, of those offenders who are unable to post bail, only those who maintain good behavior, thus becoming eligible for the maximum amount of the good behavior component of earned early release credit, are penalized by the counties certification of good behavior credit and the application of those credits by DOC. While it is clear that this unequal treatment does punish those who are unable to make bail, it hardly seems that it is a substantial or legitimate purpose of pretrial detention to exact punishment of the indigent.
In the case of In re Williams, this court said that "significant equal protection concerns are raised by the differential treatment that may be accorded the indigent as a result of his inability to post bail before trial." In re Williams, 121 Wash.2d 655, 665, 853 P.2d 444 (1993) (citing Mota, 114 Wash.2d at 469-70, 788 P.2d 538). While we do not have precisely the same issue before us as we had in Williams and Mota, this is still a case that involves the equal protection concerns we recognized in Williams. In Williams, the DOC asserted that it had merely a passive role in applying the certificates of time *731 served and credits earned as calculated by the county jails for offenders transferred from the jails to state correctional facilities. Recognizing that such a position could raise "important equal protection problems," we held that although the DOC is "entitled to give presumptive legal effect to the certification the county jail provides," the certificate had no "legal force if it is based upon an apparent or manifest error of law." Williams, 121 Wash.2d at 664, 853 P.2d 444 (footnote omitted).
The foundation of the system that we have examined here, which accords some persons unfavorable treatment simply because they are financially unable to post bail, is unconstitutional. It is, therefore, based on a manifest error of law. This being the case, DOC cannot assume the passive role of blindly accepting the certificate of earned early release time indicating the amount of good behavior credit that was calculated by the counties. In light of the above, that portion of the certificate essentially can have no legal force other than to inform DOC that Fogle and MacFarlane are eligible for the maximum credit for good behavior allowable under DOC policies for the period of time the Petitioners served awaiting trial and sentencing. I would, therefore, have us hold that DOC must (a) disregard the credit for good behavior calculated and certified by the counties in this case, (b) calculate the amount of credit for good behavior that the Petitioners would have received had they been subject to DOC earned early release time policies regarding good behavior for that period of time, and (c) credit that amount of time against the Petitioners' time served.
MADSEN, JOHNSON and PEKELIS, JJ., concur.
NOTES
[1] Fogle was detained in the Pierce County Jail for 102 days pending trial and sentencing on ten counts of possession of a controlled substance. Fogle ultimately pled guilty to one count, and was sentenced to sixty months in prison, to be served concurrently with a separate probation revocation. MacFarlane was held in the Clark County Jail for 144 days pending trial and sentencing on charges of possession of a controlled substance and assault in the third degree. MacFarlane ultimately pled guilty to both charges and received an exceptional sentence of seventy-two months for the possession offense, and eight months for the assault, to be served concurrently.
[2] Under DOC policy, an inmate may receive up to ten days' credit for each thirty days served for good behavior.
[3] As the majority observes, a prisoner in a state facility is eligible to earn not only "good-conduct time" for good behavior at a rate of ten days per thirty days served, but also may accumulate "earned time" for good performance while participating in work, academic or treatment programs. The combination of "good-conduct time" and "earned time" may not exceed a statutory maximum of one-third of the imposed sentence. (Majority Op. at 724.) See RCW 9.94A.150(1).
[4] The class is not, as the majority seems to suggest, all persons incarcerated in a county jail.
[5] Washington Const. art. I, § 20; CrR 3.2. See also State v. Kelly, 60 Wash.App. 921, 926-27, 808 P.2d 1150 (1991).