[Nos. 31974-8-II; 32232-3-II.   Division Two.   February 22, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL TRANH
DONERY, *Appellant*.

*In the Matter of the Personal Restraint of* MICHAEL T.
DONERY, *Petitioner*.

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for appellant/petitioner.

*Deborah S. Kelly, Prosecuting Attorney*; and *Robert M. McKenna, Attorney General*, and *Donna H. Mullen, Assistant*, for respondent.

¶1 BRIDGEWATER, J. — Michael Tranh Donery appeals his conviction for persistent prison misbehavior, which requires the State to prove that he had lost all potential earned early release time. RCW 9.94.070(1). We hold that the Department of Corrections (DOC) cannot remove good time earned in county jail, and it is therefore not potential earned early release time for the purposes of the persistent prison misbehavior statute. We also hold that (1) he was properly restrained during his trial; (2) he was not denied due process in previous prison disciplinary proceedings; (3) the trial court's instructions did not mislead the jury about its duty to convict; and (4) even if one of the jail infraction codes under which he was convicted was unconstitutionally vague, it would be immaterial because the jury found him guilty under two other unchallenged regulations. We consolidated this appeal with Donery's personal restraint petition. We affirm Donery's conviction and deny his petition.

## FACTS

¶2 Donery was serving a 27-month sentence for a second degree assault he committed on May 16, 2001, and for

which he was convicted on November 16, 2001. As a result of his misbehavior while in state prison, Donery lost all of his potential early release time for time served at DOC facilities by January 23, 2002. But Donery had 38 days of earned early release time from time he spent in county jail awaiting his trial and sentencing. DOC did not take away the county jail time because it believed it did not have the authority to do so.

## ANALYSIS

¶3 Donery argues that there was insufficient evidence to prove that he had lost "all potential earned early release time credit" as RCW 9.94.070(1) required because it is undisputed that he had 38 days of certified earned early release credit from the county jail. The State argues that the statute requires it to prove only that Donery lost all potential earned early release time from his stay in state correctional facilities and not county jails. Under the State's theory, there was sufficient evidence to convict Donery as Donery does not dispute that he had lost all early release time from the state system.

¶4 We therefore must determine the statutory meaning of "all potential earned early release time credit." We review questions of law, including statutory construction, de novo. *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). We look to the statute's plain language in order to give effect to legislative intent. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). When faced with an unambiguous statute, we derive the legislature's intent from the plain language alone. *Waste Mgmt. of Seattle, Inc. v. Util. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994). While the court may not look beyond the plain statutory language, the court must read the statute as a whole and harmonize each provision. *State v. Thorne*, 129 Wn.2d 736, 761, 921 P.2d 514 (1996).

¶5 To convict Donery of persistent prison misbehavior, the State had to prove that (1) Donery knowingly committed (2) a serious infraction that did not constitute a class A or B felony, (3) "after losing all potential earned early release time credit." RCW 9.94.070(1). The only issue is whether earned early release time from county jails is included in the phrase.

¶6 RCW 9.94.070(1) does not define "potential earned early release time credit." But the phrase is defined in the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, and in the statute describing DOC's obligations. The DOC statute defines it as "earned release as authorized by RCW 9.94A.728." RCW 72.09.015(5). The SRA provision defines it as "earned release from confinement as provided in RCW 9.94A.728." RCW 9.94A.030(21). Reading the DOC and SRA statutes as part of a statutory scheme, the legislature's apparent intent was to define "earned early release" by reference to RCW 9.94A.728.

¶7 Therefore, we turn to RCW 9.94A.728 to determine the meaning of "earned early release time." That statute provides:

> the term of the sentence of an offender committed to a correctional facility operated by the department may be reduced by earned release time in accordance with the procedures that shall be developed and promulgated by the correctional agency having jurisdiction in which the offender is confined.

RCW 9.94A.728(1). The Washington Supreme Court has interpreted this provision to "give . . . both county jails and the state correctional system[ ] plenary authority over good-time awards for offenders under their jurisdiction." *In re Pers. Restraint of Williams*, 121 Wn.2d 655, 661, 853 P.2d 444 (1993). The court emphasized that "[u]nder our reading of the statute, the county jail retains complete control over the good-time credits granted to offenders within its jurisdiction." *Williams*, 121 Wn.2d at 665.

¶8 RCW 9.94A.728(1) also provides that "[i]f an offender is transferred from a county jail to the department,

the administrator of a county jail facility shall certify to the department the amount of time spent in custody at the facility and the amount of earned release time." RCW 9-.94A.728(1). The *Williams* court interpreted this sentence of the statute to mean that DOC must accept the county jail's calculation of good time unless it is based on an apparent or manifest error of law. *Williams*, 121 Wn.2d at 664. Interpreting the statute as a method of avoiding DOC oversight of county jails, the court also held that DOC is not required to review or approve good-time policies of county jails or to review the certification's accuracy. *Williams*, 121 Wn.2d at 666. Even when the certification is invalid, the remedy is not for DOC to correct the error, but it is to remand to the county jail for recertification. *Williams*, 121 Wn.2d at 668 (Durham, J., concurring). *Williams*'s basic rationale is state penal institutions and county jails have separate authority for granting earned early release time.

¶9 Applying this rationale to the persistent prison misbehavior statute, earned early release time means the time Donery could earn in the state system. The State correctly notes that RCW 9.94.070(1) applies only to "[a]n inmate of a state correctional institution." And RCW 9-.94.070(3) incorporates the definition of "state correctional institution" from RCW 9.94.049, which provides that a state correctional institution is one under the supervision of DOC. RCW 9.94.049(2). Significantly, this provision specifically distinguishes a "state correctional institution" from a "correctional institution," which includes both prisons and county jails. RCW 9.94.049(1), (2).

¶10 Because RCW 9.94A.728 divides plenary authority between the county jails and state facilities and the persistent prison misbehavior statute applies only to state correctional facilities, we interpret the statute to require the State to prove that Donery had lost all time within the state system, not the county jail.

¶11 This interpretation, as the State notes, gives meaning to the word "potential" in the persistent prison misbehavior statute. "Potential" means "existing in possibility."

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1775 (1969). Because the state institutions do not have the authority to alter county jail good-time awards, the only possible early release time that an inmate of a state institution can earn is time granted by DOC.

¶12 Donery argues that this interpretation is undercut by the DOC's administrative code which provides that "all awards of good conduct time shall be considered tentative and therefore all good conduct time credits earned or to be earned may be addressed under this rule." WAC 137-28--350(1)(l)(iii). But this Washington Administrative Code provision does not mean that the DOC has the authority to grant or revoke early release time the jail certified. An administrative agency has only those powers the legislature specifically granted. *State v. Jackson*, 137 Wn.2d 712, 724 n.5, 976 P.2d 1229 (1999). And RCW 9.94A.728 allocates the authority over good time credit to the agency having jurisdiction over the prisoner. Thus, the WAC provisions can govern only early release time DOC awards.

¶13 Donery's next argument is that nothing in the WACs or Revised Code of Washington prevents DOC from taking away early release time the county jail awarded. Donery suggests that the court read the absence of a provision in the statute and regulations to mean that DOC could do so if it wished. But this turns the rule that administrative agencies have only those powers the legislature granted on its head. Unless the statute expressly or by necessary implication gives the power to oversee county jails' good time policies, DOC does not have that power. *See Ass'n of Wash. Bus. v. Dep't of Revenue*, 155 Wn.2d 430, 437, 120 P.3d 46 (2005) (citing *Tuerk v. Dep't of Licensing*, 123 Wn.2d 120, 124-25, 864 P.2d 1382 (1994)) (holding agencies have only those powers expressly granted or necessarily implied).

¶14 Donery's last argument is that reading the statute to require DOC to take away all county time undercuts DOC's ability to control its prisoners. The State responds that

its interpretation of the statute actually facilitates the legislature's intent. We agree.

¶15 We give substantial weight to an agency's interpretation of statutes and regulations when it falls within its expertise, but we retain our ultimate responsibility to see that rules and statutes are applied consistently with the legislature's policy. *Children's Hosp. & Med. Ctr. v. Dep't of Health*, 95 Wn. App. 858, 864, 975 P.2d 567 (1999).

¶16 Here, the Washington Supreme Court has interpreted at least one of the purposes behind the earned release time program as a method of maintaining discipline in prisons and county jails. *Williams*, 121 Wn.2d at 664-65. As Donery notes, the prison would have been able to give greater punishment, presumably gaining some level of additional discipline, if DOC could take away county jail time.

¶17 But there would be a corresponding loss of disciplinary power in the county jails. Under the State's proposed interpretation, the county's good time certification is a more powerful reward for prisoners if the State cannot take it away. As the time prisoners spend in county jail is usually much shorter than in DOC, and because the county cannot take away good credit time an inmate might earn in state prison, the county arguably needs to have a greater incentive to be able to improve discipline. Therefore, holding that DOC does not have authority to take away county time furthers the legislature's purpose of allowing both county jails and state institutions to exercise plenary authority over good time awards. *Williams*, 121 Wn.2d at 661.

¶18 Therefore, we hold that to convict Donery of persistent prison misbehavior, the State had to prove that he lost all earned early release time that he could potentially have earned in the state correctional facility. Because there was adequate evidence in the record to support this conclusion, the statute was properly applied to Donery.

¶19 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the

Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

¶20 Affirmed; the personal restraint petition is denied.

HOUGHTON and PENOYAR, JJ., concur.