[No. 57853-2. En Banc. September 19, 1991.]

THE STATE OF WASHINGTON, *on the Relation of Mary Faulk, as Director of the Department of Licensing, Appellant,* v. CSG JOB CENTER, ET AL, *Respondents.*

BRUCE WAYNE, ET AL, *Respondents,* v. THE DEPARTMENT OF LICENSING, *Appellant.*

494

*Kenneth O. Eikenberry, Attorney General,* and *Martha A. French* and *Shannon E. Smith, Assistants,* for appellant.

*Stanley E. Perdue,* for respondents.

ANDERSEN, J. —

## FACTS OF CASE

This case involves a challenge to the constitutionality of The Employment Agency Act (Act), RCW 19.31, as applied to an employment listing service. We hold that the Act represents a valid exercise of the Legislature's police power and does not infringe upon the free speech, equal protection or contract rights of employment listing services which offer more than the sale of a generic job list.

Appellant, the State Department of Licensing (Department), is charged with enforcing the Act. Respondent CSG Job Center (CSG) is a Spokane employment listing service

owned and operated by Respondents Bruce Wayne and Jeevan Wayne.[1]

The Department claims that CSG provides services which place it squarely within the statutory definition of "employment agency", thus making CSG subject to licensing and regulation under the Act.

CSG, on the other hand, claims it is different from a typical employment agency. In its view, the employment listing service is analogous to a newspaper of general circulation.

CSG operates as follows.

It charges clients a 1-time advance fee of $135.[2] It is this practice of charging an advance fee which is at the crux of this lawsuit. The Act, specifically RCW 19.31.150, prohibits employment agencies from charging a fee to any client until the client becomes employed as a result of the agency's services.

When CSG learns of job openings in the Spokane area, it classifies the jobs according to category and enters the data in a customized computer data base.

It advertises specific job openings in the Spokane newspapers. Its newspaper advertisements do not state that the service merely sells a list, but rather announce that specific jobs, with specific salaries, are available through CSG.

CSG's brochures declare that the majority of its listings are unadvertised job openings listed exclusively with CSG. They also state that the service matches applicants' qualifications to jobs in the data base and provides applicants with lists of those jobs. One brochure further states that CSG's "helpful Employment Representatives" work with clients to help ensure that clients are matched to the

---

[1] For convenience, all respondents will be collectively referred to herein as CSG.

[2] Although the record reflects that CSG charges its clients $95 for its services, counsel for CSG indicated during oral argument before this court that the current fee is $135.

best possible jobs for their particular abilities and career goals. CSG also provides applicants with interviewing guidelines and resumé drafting suggestions.

CSG guarantees its clients will find a job within 90 days or the 3-month service period will be extended for up to a year.

CSG claims the lists which it provides its clients are tailored to fit each client's qualifications. The lists generally provide the job title, employer's name and address, salary, job description, job requirements and contact instructions for each job opening. Some of the instructions for contacting employers require that clients contact employers only through CSG.

CSG denies, however, that it operates as an employment agency.

The Department apparently began its investigation of CSG in the spring of 1988; this was after receiving complaints about the employment listing service from licensed employment agencies in Spokane. After the Department informed CSG that it had to obtain an employment agency license in order to continue in business, CSG filed an action for declaratory judgment asking the superior court to declare that the Act does not apply to employment listing services. CSG also asked the court to enjoin the Department from enforcing the Act against it. The Department responded by filing a complaint against CSG, seeking an injunction to prohibit CSG from continuing its operation unless it obtained an employment agency license.

The cases were consolidated and CSG moved for summary judgment. Before that motion was heard, the Legislature amended the Act to specifically include an "employment listing or employment referral service" within the statutory definition of "employment agency".[3] The amendatory legislation also changed the Act in other ways not material to this case; it became effective June 7, 1990.[4]

---

[3] RCW 19.31.020(1); Laws of 1990, ch. 70, § 1, p. 689.

[4] Laws of 1990, p. ii (General Information).

The trial court orally granted CSG's motion for summary judgment on May 3, 1990,[5] just before the effective date of the new law, permanently enjoining the Department from applying the provisions of the Act to CSG. The summary judgment order further declared that the 1990 amendment to the Act was invalid as applied to employment listing services such as CSG. The trial court ruled that the change in the law violated CSG's First Amendment rights to freedom of speech because it did not take the least restrictive method of regulating CSG's operation. The trial court also ruled that the change in the law violated CSG's equal protection rights because it treated employment listing services differently from newspapers listing employment opportunities and that it impaired CSG's contract rights.

The Department appealed to the Court of Appeals which in turn certified the case to us pursuant to RCW 2.06-.030(c). This court accepted certification.

Three issues are presented.

ISSUES

ISSUE ONE. Does The Employment Agency Act (RCW 19.31) apply to an employment listing service which sells a customized computer list of jobs, and offers ancillary services in connection therewith, but which does not arrange for employment interviews on behalf of individual clients?

ISSUE TWO. Is The Employment Agency Act a reasonable exercise of the Legislature's police power?

ISSUE THREE. Does The Employment Agency Act violate the free speech, equal protection or contract rights of employment listing services such as CSG?

DECISION

ISSUE ONE.

CONCLUSION. When an employment listing service provides services in addition to the sale of a generic job list, it

---

[5]The written order on summary judgment was entered by the trial court on June 21, 1990.

is an employment agency as defined by The Employment Agency Act and, as such, is subject to the requirements of the Act.

■ General rules of statutory construction instruct that: a statute is to be interpreted in a manner that is consistent with its underlying purpose;[6] unlikely, absurd or strained results are to be avoided;[7] and where a statute is susceptible of more than one interpretation, some of which may render it unconstitutional, the court will adopt a construction which sustains the statute's constitutionality, if at all possible.[8]

Prior to June 1990, the Act defined an employment agency in the following language:

> (1) "Employment agency" is synonymous with "agency" and shall mean any business in which any part of the business gross or net income is derived from a *fee* received from *applicants*, and in which any of the following activities are engaged in:
> (a) The offering, promising, procuring, or attempting to procure employment for applicants; or
> (b) The giving of information regarding where and from whom employment may be obtained.
> In addition the term "employment agency" shall mean and include any person, bureau, organization, or school which for profit, by advertisement or otherwise, offers, as one of its main objects or purposes, to procure employment for any person who pays for its services, or which collects tuition, or charges for service of any nature, where the main object of the person paying the same is to secure employment. The term "employment agency" shall not include labor union organizations, temporary service contractors, proprietary schools, theatrical agencies, farm labor contractors, or the Washington state employment agency.

(Italics ours.) Former RCW 19.31.020(1).

The 1990 amendment to the Act inserted the words "employment listing or employment referral service" into the

---

[6]*In re Cross*, 99 Wn.2d 373, 382, 662 P.2d 828 (1983).

[7]*State v. Stannard*, 109 Wn.2d 29, 36, 742 P.2d 1244 (1987); *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990).

[8]*In re Cross*, 99 Wn.2d at 382-83.

last paragraph of the foregoing definition,[9] but did not change the substance of the previous law.[10]

■ As we read it, the 1990 amendment does little more than clarify the Legislature's meaning of "employment agency". When an amendment simply clarifies a possibly ambiguous statute and does not contravene judicial construction of the statute, the amendment may be read as "curative, remedial, and retroactive".[11]

■ In the case before us, the effect of the 1990 amendment on the interpretation of the statute is negligible. We perceive the application of the statute under either the former or the amended statute to be the same.

■ In order for the statute to apply to an employment listing service under the first part of the definition, the business must receive part of its income from a "fee"[12] received from an "applicant".[13] Thus if an employment listing service (1) receives a fee for services under an arrangement between the listing service and a person looking for

---

[9]Laws of 1990, ch. 70, § 1, p. 689.

[10]The amended paragraph, RCW 19.31.020(1), now states in part:

"In addition the term 'employment agency' shall mean and include any person, bureau, *employment listing or employment referral service*, organization, or school which for profit, by advertisement or otherwise, offers, as one of its main objects or purposes, to procure employment for any person who pays for its services, or which collects tuition, or charges for service of any nature, where the main object of the person paying the same is to secure employment." (Italics ours.)

[11]*State v. Jones*, 110 Wn.2d 74, 82, 750 P.2d 620 (1988); *Overton v. Economic Assistance Auth.*, 96 Wn.2d 552, 557-58, 637 P.2d 652 (1981).

[12]" 'Fee' means anything of value. The term includes money or other valuable consideration or services or the promise of money or other valuable consideration or services, received directly or indirectly by an employment agency from a person seeking employment, in payment for the service." RCW 19.31.020(10) (added by Laws of 1990, ch. 70, § 1, p. 689).

[13]" 'Applicant' . . . means any person, whether employed or unemployed, seeking or entering into any arrangement for his employment or change of his employment through the medium or service of an employment agency." RCW 19.31.020(6).

employment, *and* (2) offers to procure or attempts to procure employment *or* provides information about where and from whom employment may be obtained, then the employment listing service is an employment agency.

Under the second part of this definition, an employment listing service (under either the amended statute or its predecessor) which offers to procure employment as one of its main purposes, or which charges for services of any nature where the main object of the person paying for the service is to secure employment, is an employment agency.

The statute clearly does not apply to newspapers or perhaps even to all employment listing services. On its face, the statute would not apply to an employment listing service which limits its operation to the sale of a generic job list. However, it does apply to those employment listing services which offer to procure employment for those paying for its services or which charge for "services" of some kind. The concept of services requires the performance of an act that benefits another[14] and, although it has a broad and general meaning, would usually not include the mere sale of an item such as a generic job list or newspaper.

CSG's operation provides more than a mere sale of a publication. It provides career advice; it matches the qualifications of clients to jobs in its data base; it offers interviewing advice and resumé writing pointers; it advertises that its purpose is to "put Spokane back to work"; it advertises that particular jobs are available through the service; and it arranges or has arranged some interviews between clients and employers. Under either the former or the amended version of the Act, CSG's operation is an employment agency as defined by the Act.

As an "employment agency" CSG is required to be licensed to conduct business in this state.[15] Additionally,

---

[14]*See, e.g., Skrivanich v. Davis*, 29 Wn.2d 150, 161, 186 P.2d 364 (1947) (defining "services" as used in the unemployment compensation act).

[15]RCW 19.31.080.

the agency must keep accurate records,[16] post a bond with the Department,[17] and have approval of its contract forms and fee schedules before contracting with clients.[18]

Most significant in the case of advance-fee employment listing services is the statutory provision that prohibits employment agencies from collecting a fee from a client until the client has secured employment through the agency's services.[19]

CSG contends that this requirement, as applied to employment listing services, is unreasonable and therefore the Legislature did not have the power to enact it. That leads into the next issue.

ISSUE TWO.

CONCLUSION. The Employment Agency Act was enacted to protect job seekers from unscrupulous businesses that could take advantage of the financial vulnerability of the unemployed. The Act serves that purpose in a reasonable manner and is not an unreasonable exercise of the Legislature's police power.

■■ The Legislature may, in the exercise of the police power, regulate businesses in order to promote the public welfare.[20] The police power will be broadly construed,[21] and the party challenging the validity of such a statute has the burden of proving it is unconstitutional.[22]

---

[16]RCW 19.31.030.

[17]RCW 19.31.090.

[18]RCW 19.31.050.

[19]RCW 19.31.150.

[20]*Ketcham v. King Cy. Med. Serv. Corp.*, 81 Wn.2d 565, 569, 502 P.2d 1197 (1972).

[21]*Ketcham*, 81 Wn.2d at 569.

[22]*State v. Brayman*, 110 Wn.2d 183, 193, 751 P.2d 294 (1988); *Caminiti v. Boyle*, 107 Wn.2d 662, 675-76, 732 P.2d 989 (1987), *cert. denied*, 484 U.S. 1008, 98 L. Ed. 2d 654, 108 S. Ct. 703 (1988).

■ In determining the validity of a statute passed pursuant to the police power, we apply a 2-part test. First, does the challenged statute tend to promote the health, peace, morals, education, good order and welfare of the people? That is, does it tend to correct some evil or promote some interest of the State? Second, do the requirements imposed by the challenged statute bear a reasonable and substantial relation to accomplishing the purpose of the enactment?[23]

In applying this 2-part test to the Act, we must bear in mind the strong presumption in favor of finding the statute constitutionally valid.[24]

■ The regulation of employment agencies is within the authority of the State in the exercise of its police power.[25] In determining whether this particular legislation tends to promote the welfare of the people of the State of Washington, we must presume that if a conceivable set of facts exists to justify the legislation, then those facts do exist and the legislation was passed with reference to those facts.[26]

The need for protecting persons who are unemployed and often desperate for work or information about jobs from the possible exploitation of private employment agencies has been determined to justify legislation regulating such agencies.[27] The clients of employment listing services,

---

[23]*State v. Conifer Enters., Inc.*, 82 Wn.2d 94, 96-97, 508 P.2d 149 (1973).

[24]*Caminiti*, 107 Wn.2d at 675; *In re Marriage of Johnson*, 96 Wn.2d 255, 258, 634 P.2d 877 (1981).

[25]*Brazee v. Michigan*, 241 U.S. 340, 343, 60 L. Ed. 1034, 36 S. Ct. 561 (1916) (states may require employment agencies to be licensed and may require that the agencies follow reasonable regulations). *See Petstel, Inc. v. County of King*, 77 Wn.2d 144, 152, 459 P.2d 937 (1969) (upholding the constitutionality of a King County ordinance requiring employment agencies to be licensed and regulating fees charged by the agencies).

[26]*Conifer*, 82 Wn.2d at 97.

[27]*Brazee*, 241 U.S. at 343; *Petstel*, 77 Wn.2d at 152.

like the clients of employment agencies, are usually out of work. They are the least able to afford the costs of the job search before they secure employment. Generally, they have little or no bargaining power and are unable to shop for the best service if they must pay in advance for employment-related services and job lists. Regulation and licensing of employment listing services protects the vulnerable job seeker from paying for lists of "bogus" jobs or paying in advance for information only to find that the information may be faulty or that the listing service has gone out of business before providing the full services and publications purchased.

Facts justifying the regulation of employment listing services can be articulated and therefore are presumed to be the basis of the legislation in question.

The second part of the test — determining whether the regulations reasonably accomplish the purpose of the Act — is the key issue in this case. CSG contends it is unreasonable to prevent it from collecting its fee at the time the contract between the client and CSG is executed. It argues that it agrees to sell a list and should, like a newspaper, be paid when the publication is purchased. In CSG's view, requiring it to wait until a client is employed is unreasonable because it does not promise employment and does not involve itself in the personnel process. CSG also states that it believes the regulation of employment listing services under the Act will result in CSG going out of business and thus cannot pass the judicial test of reasonableness.

There are limits upon the judicial test of reasonableness[28] which are based upon the separation of legislative and judicial functions.[29] This court will not "weigh the wisdom of the particular legislation".[30] Instead,

---

[28]*Petstel*, 77 Wn.2d at 154.

[29]*Conifer*, 82 Wn.2d at 97 (quoting *Lenci v. Seattle*, 63 Wn.2d 664, 668, 338 P.2d 926 (1964)).

[30]*Petstel*, 77 Wn.2d at 155.

in determining whether a particular statute is reasonable, we must conclude only that there is a rational connection between the purpose of the statute and the method the statute uses to accomplish that purpose.[31]

 Economic hardship on one affected by legislation enacted pursuant to the police power generally does not justify a finding of unreasonableness or by itself constitute a reason to void the law.[32] The fact that a business might have to change its method of operation, or even that the value of the business property would be adversely affected, does not per se make a regulation unreasonable.

A contention that an entity "would be unable to stay in business, giving the service it was giving, while complying with the [statute]" did not make the challenged legislation unreasonable in *Petstel, Inc. v. County of King*, 77 Wn.2d 144, 157, 459 P.2d 937 (1969). As this court said in that case,

> we do not feel that the mere fact that plaintiff may be unable to continue its present method of operation and offering its present services per se establishes the unreasonableness of the rates set by the resolution; nor does this evidence overcome the presumption of validity favoring the resolution.

*Petstel*, 77 Wn.2d at 157.

*Petstel* went on to say:

> A determination that the rates are unreasonable and thus violative of the constitution requires that there be a debilitative effect upon the industry as a whole which is not reasonably necessary to meet and correct the evil sought to be cured. Plaintiff has not carried its burden of establishing the unreasonableness of the rates by merely introducing evidence that the gross income of its agency would be reduced.

*Petstel*, 77 Wn.2d at 158.

CSG did not undertake to show that the statute will have a debilitating effect on the employment listing service industry as a whole. It also did not show it would not be

---

[31]*Ketcham*, 81 Wn.2d at 570.

[32]*Ford v. Bellingham-Whatcom Cy. Dist. Bd. of Health*, 16 Wn. App. 709, 714, 558 P.2d 821 (1977).

able to adjust its method of operation to comply with the statutory mandates.

■ While the Act is not tailored to employment listing services as well as it might have been,[33] it also is not precisely tailored to resumé drafting services, or to certain vocational schools, which are included within its scope and subject to its regulation. The licensing and regulation of employment listing services which offer services beyond the mere sale of a generic publication are reasonably related to the purpose of the Act which is to protect unemployed and often vulnerable clients of employment agencies from exploitation.

The Legislature's inclusion of employment listing services within the ambit of the Act was a valid exercise of the police power. Unless the Act violates the constitutional rights of CSG, it may therefore properly be applied to this employment listing service. CSG next contends the Act violates its constitutional rights to freedom of speech, equal protection and contract.

ISSUE THREE.

CONCLUSION. The Employment Agency Act does not ban or restrict the content of CSG's job lists and its First Amendment rights are therefore not implicated. Because the Act does not apply to businesses which merely sell a generic job list, there is no equal protection violation. Nor are CSG's contract rights impaired by the Act.

■ The Act does not prohibit — or even attempt to regulate — the publication of generic job lists. On its face, it does not appear to apply to the mere sale of job listings. Furthermore, the Act does not ban the sale of CSG's lists and services and it does not regulate the content of the lists currently offered by CSG. It is the Act's prohibition of

---

[33]Some states have recently revised their employment agency statutes to specifically regulate certain employment listing services in a manner that differs from regulation of employment agencies generally. *See, e.g.,* Cal. Civ. Code § 1812.500 *et seq.* (West Supp. 1991); D.C. Code Ann. § 36-1001 *et seq.* (1988); Ill. Rev. Stat. ch. 121 1/2, ¶ 2001 *et seq.* (West Supp. 1991).

the advance fee, and a forced delay in payment, that CSG claims violates its free speech rights.

The First Amendment is not implicated just because an economic burden is imposed on a speaker, unless the burden "is directed at, or presents the danger of suppressing, particular ideas."[34]

Because there is no restriction or prohibition of CSG's right to provide its lists and services, the First Amendment is not here implicated.

There also is no equal protection violation. CSG's equal protection argument is based on its repeated claims that the employment listing service is the same as a newspaper. CSG argues that it is treated differently because it is required to be licensed while a newspaper is not so restricted.

The appropriate equal protection test for an economic regulation is the minimum scrutiny or rational basis test. A "particularly heavy presumption of constitutionality applies in economic regulation."[35] The rational basis test requires that challengers do more than merely challenge the wisdom and expediency of a statute. They must show that the classification is contrary to the purposes of the enabling legislation. "The classification must be purely arbitrary to overcome the strong presumption of constitutionality applied to economic regulations."[36]

To our view, CSG differs from newspapers because it offers services in addition to the sale of a customized list of available jobs and it also offers to help its clients secure

---

[34]*Leathers v. Medlock*, ___ U.S. ___, 113 L. Ed. 2d 494, 111 S. Ct. 1438, 1447 (1991) (upholding the constitutionality of an Arkansas statute that imposed a sales tax on cable television services, while exempting print media from the tax).

[35]*Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 431, 799 P.2d 235 (1990).

[36]*Omega*, 115 Wn.2d at 431 (citing *American Network, Inc. v. Utilities & Transp. Comm'n*, 113 Wn.2d 59, 776 P.2d 950 (1989)).

a job. Because the Act applies to listing services only where something more than the sale of the same publication to all clients is involved, the classification has a reasonable basis. The regulation is not merely of the publication but of a business that makes promises, gives advice, and offers "services" to job seekers.

There is a substantial difference between a newspaper's sale of classified help-wanted ads and the package of services offered by CSG as an employment listing service. The difference in the products and services offered by each justifies a regulation of employment listing services without a corresponding regulation of newspapers.

CSG also claims that the Act, as applied to CSG, impairs contracts that exist between CSG and its clients. It argues that it will not be able to fulfill the terms of existing contracts because it will not have an income if it is required to wait until future clients gain employment to earn its fees.

 Const. art. 1, § 23 protects individuals from impairment of contracts; it provides:

> No . . . law impairing the obligations of contracts shall ever be passed.

A contract is impaired by a statute when that statute alters the terms and conditions of the contract, or when it lessens the value of the contract.[37] However, contract rights are subject to the police power and must not stand above the general welfare.[38]

The terms of existing laws and the possibility of a change in the law based on an exercise of the police power are read into contracts.[39]

---

[37]*Ketcham v. King Cy. Med. Serv. Corp.*, 81 Wn.2d 565, 576, 502 P.2d 1197 (1972).

[38]*Crane Towing, Inc. v. Gorton*, 89 Wn.2d 161, 174, 570 P.2d 428, 97 A.L.R.3d 482 (1977).

[39]*Aetna Life Ins. Co. v. Washington Life & Disab. Ins. Guar. Ass'n*, 83 Wn.2d 523, 539, 520 P.2d 162 (1974).

CSG was subject to the provisions of the Act even before the 1990 amendments to that Act. Further, the existing contracts between CSG and its clients have been performed by the clients by the payment of a fee. CSG claims that it will not have the money to perform its obligations under the contracts, if it is required to be licensed. Existing contracts should not be affected, however, where a fee has already been received by CSG and where the fee undoubtedly was calculated in a manner expected to cover the cost of the service. CSG's contracts with its clients have not been impaired.

In sum, the Act was passed to protect job seekers from problems that can arise if agencies, including employment listing services, become tempted to take advantage of unemployed persons who are often desperate and vulnerable. The Act is a valid exercise of the Legislature's police power. It does not violate the free speech, equal protection or contract rights of employment listing services that offer more than the sale of a generic publication.

Reversed.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.