[No. 63004-1-I.   Division One.   August 31, 2009.]

OPTIMER INTERNATIONAL, INC., *Respondent*, v. RP BELLEVUE, LLC, *Appellant*.

*Paul E. Brain* (of *Smith Alling Lane*), for appellant.

*Craig S. Sternberg* and *Aaron S. Okrent* (of *Sternberg Thomson Okrent & Scher, PLLC*), for respondent.

¶1 DWYER, A.C.J. — RP Bellevue, LLC, appeals from a superior court's order denying its motion to vacate or modify the arbitration award entered in a dispute with its tenant, Optimer International, Inc. The superior court denied RP Bellevue's motion because the parties' lease contained a clause in which each party agreed to waive the right to seek judicial review of any such award. However, Washington's uniform arbitration act,[1] chapter 7.04A RCW, which by its terms applies retroactively to all arbitration agreements, prohibits parties to an arbitration agreement from waiving the right to seek judicial review of an arbitration award. Although the Arbitration Act was adopted

---

[1] Unless specified otherwise, when we refer to the "Arbitration Act," the "Act," or the "current Act," we refer to this statute.

after the formation of the parties' lease, it does not unconstitutionally impair the parties' preexisting contractual obligations to one another because the waiver clause in the lease was invalid even before the passage of the Act. Moreover, even if the nonwaiver provision of the Act did impair the parties' contractual obligations, it is still constitutional as it is reasonably necessary to accomplish a legitimate public purpose. Thus, the superior court erred by concluding that the lease's waiver clause was enforceable. Accordingly, we reverse the judgment of the superior court and remand this cause for further proceedings.

I

¶2 In April 2008, Optimer made a demand for arbitration against its commercial landlord, RP Bellevue, pursuant to the parties' lease agreement. Optimer had entered into this agreement in 1997 with RP Bellevue's predecessor-in-interest. Paragraph 28.11 of the lease provides that "[i]n the event of any dispute between the parties under this Lease, the dispute shall be resolved by single-arbitrator arbitration before the American Arbitration Association." The parties' arbitration agreement further provides that "[t]he decision of the Arbitrator shall be final and non-appealable and enforceable in any court of competent jurisdiction." Ultimately, an arbitration was held with the arbitrator ruling in Optimer's favor on some of its claims, including an award of attorney fees to Optimer as the prevailing party.

¶3 RP Bellevue subsequently filed a motion in superior court seeking to vacate or modify the arbitration award. In its motion, RP Bellevue claimed that the arbitrator exceeded his powers and that it was therefore entitled to relief pursuant to RCW 7.04A.230(1)(d), which provides that the reviewing court "shall vacate an [arbitration] award if . . . [a]n arbitrator exceeded the arbitrator's powers." Optimer opposed the motion, arguing, in part, that the parties had contractually waived any right to seek judicial review of the

arbitration award. Without addressing the merits of RP Bellevue's motion and relying on our decision in *Harvey v. University of Washington*, 118 Wn. App. 315, 76 P.3d 276 (2003), the superior court denied the motion, ruling that the parties had contractually waived the right to seek judicial review of the arbitration award.[2] The superior court also confirmed the arbitration award. RP Bellevue then commenced this appeal.

¶4 Unfortunately, in neither their briefing before the superior court nor their initial briefing to this court did the parties address the question of whether Washington's Arbitration Act renders invalid the waiver clause in their arbitration agreement. In 2005, the state legislature adopted the uniform arbitration act. LAWS OF 2005, ch. 433. Except for a few differences that are not pertinent here, the current Act follows verbatim the Uniform Arbitration Act adopted in 2000 by the National Conference of Commissioners on Uniform State Laws.[3] The 2005 legislation repealed, in its entirety, the prior statutory framework governing arbitration, former chapter 7.04 RCW, which was the governing law when *Harvey* was decided. The current Act became effective on January 1, 2006. Moreover, the legislature specified that the current Act would apply retroactively to all arbitration agreements as of July 1, 2006. *See* RCW 7.04A.030(2).[4] Furthermore, the current Act expressly provides that the parties to an arbitration agreement may not

---

[2] The superior court ruled that "the parties may waive the right to appeal; and that the provision of . . . the Lease that the Arbitrator's decision is 'final and nonappealable and enforceable' constitutes a voluntary and knowing waiver of judicial review under RCW 7.04A.010 et seq. and therefore there is no right to appeal."

[3] The Uniform Arbitration Act adopted in 2000 by the Uniform Law Commission must be distinguished from the first Uniform Arbitration Act adopted in 1956. Although the recently adopted uniform act is formally titled "The Uniform Arbitration Act (2000)," it is referred to in the official comments and in separate commentary as the "Revised Uniform Arbitration Act" to distinguish it from the 1956 act. Since the 1956 uniform law is not here at issue, we refer to the uniform act adopted in 2000 by its formal title.

[4] RCW 7.04A.030(2) provides, "On or after July 1, 2006, this chapter governs agreements to arbitrate even if the arbitration agreement was entered into before January 1, 2006."

waive or vary the circumstances under which a court shall vacate an arbitration award. *See* RCW 7.04A.040(3), .230.[5] At oral argument, we questioned the parties about the effect of the current Act on their arbitration agreement and gave them the opportunity to submit supplemental briefing on the questions of whether the Act renders the waiver clause invalid and, if so, whether it thus violates constitutional prohibitions against the legislative impairment of contracts. *See* U.S. CONST. art. I, § 10; WASH. CONST. art. I, § 23. Having considered the parties' supplemental briefing, we may now resolve the issues presented in this appeal.

## II

¶5 Optimer initially contends that we should not consider whether the current Arbitration Act renders invalid the lease agreement's waiver clause. We should decline to do so, Optimer avers, because RP Bellevue did not raise this

---

[5] RCW 7.04A.040 provides, in pertinent part:

(1) Except as otherwise provided in subsections (2) and (3) of this section, the parties to an agreement to arbitrate or to an arbitration proceeding may waive or vary the requirements of this chapter to the extent permitted by law.

(2) Before a controversy arises that is subject to an agreement to arbitrate, the parties to the agreement may not:

(a) Waive or vary the requirements of RCW 7.04A.050(1) [specifying that the manner for applying for judicial relief from an arbitration award shall be via the procedure for filing a motion in a civil action] or 7.04A.280 [specifying the circumstances under which an appeal may be taken from a court order concerning an arbitration proceeding or arbitration award].

. . . .

(3) The parties to an agreement to arbitrate may not waive or vary the requirements of this section or RCW . . . 7.04A.230 [specifying the circumstances under which a court shall vacate an arbitration award], 7.04A.240 [listing the circumstances under which a court shall modify or correct an arbitration award], . . . 7.04A.901 [requiring that, in construing and applying the Act, consideration must be given to the need to promote uniformity of the statute among states that enact it], [or] 7.04A.903 [providing that the Act does not affect an action or proceeding commenced or right accrued before January 1, 2006].

RCW 7.04A.230 provides, in pertinent part:

(1) Upon motion of a party to the arbitration proceeding, the court shall vacate an award if:

. . . .

(d) An arbitrator exceeded the arbitrator's powers . . . .

specific issue before the superior court and thus failed to preserve it for appellate review. We disagree.

¶6 Optimer is correct that, generally, "issues cannot be raised for the first time on appeal." *State v. Kennar*, 135 Wn. App. 68, 71, 143 P.3d 326 (2006) (citing RAP 2.5(a)); *accord State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). However, in the superior court proceeding the parties and the court relied on judicial decisions based on former chapter 7.04 RCW, which was superseded long before the motion was filed in superior court. The superior court particularly based its ruling on *Harvey*, which was decided before the enactment of the current Arbitration Act and on which Optimer relied heavily in its briefing. The parties' and the court's reliance on case law developed under a superseded statutory regime presents an entirely different situation from that in which a party fails to raise an issue altogether.

¶7 As our Supreme Court recently emphasized, we may not "excuse an order based on an erroneous view of the law because the trial court considered and rejected an equally erroneous argument." *State v. Quismundo*, 164 Wn.2d 499, 505, 192 P.3d 342 (2008). "A trial court's obligation to follow the law remains the same regardless of the arguments raised by the parties before it." *Quismundo*, 164 Wn.2d at 505-06. Here, RP Bellevue contested the enforceability of the lease's waiver provision. Optimer urged its validity. The superior court ruled on the issue. We have an obligation to see that the law is correctly applied. Thus, we must consider the effect of the current Arbitration Act on the parties' arbitration agreement.[6]

---

[6] We also note that "RAP 2.5(a) is permissive in nature and does not automatically preclude [us] from reviewing an issue not raised below." *In re Marriage of Wendy M.*, 92 Wn. App. 430, 434, 962 P.2d 130 (1998) (citing *Jones v. Stebbins*, 122 Wn.2d 471, 479, 860 P.2d 1009 (1993)). Further, pursuant to RAP 12.1(b), where we conclude "that an issue which is not set forth in the briefs should be considered to properly decide a case, [we] may notify the parties and give them an opportunity to present written argument on the issue raised by [us]." The parties were given such an opportunity.

## III

¶8 Preliminarily, we must determine whether and to what extent the current Arbitration Act, which was enacted in 2005, applies to the parties' arbitration agreement, which was formed in 1997. To do so, we must construe the Arbitration Act.

¶9 The primary goal of statutory construction is to discern and carry out the legislature's intent. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001) (citing *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991)). "If a statute is plain and unambiguous, its meaning must be primarily derived from the language itself." *Cockle*, 142 Wn.2d at 807 (citing *Dep't of Transp. v. State Employees' Ins. Bd.*, 97 Wn.2d 454, 458, 645 P.2d 1076 (1982)). If we cannot discern the legislature's intent from the plain text of the statute, we "resort to principles of statutory construction, legislative history, and relevant case law to assist us in discerning legislative intent." *Cockle*, 142 Wn.2d at 808 (citing *Harmon v. Dep't of Soc. & Health Servs.*, 134 Wn.2d 523, 530, 951 P.2d 770 (1998); *State v. Bash*, 130 Wn.2d 594, 601-02, 925 P.2d 978 (1996)).

¶10 Pursuant to RCW 7.04A.030(2), as of July 1, 2006, the Arbitration Act "governs agreements to arbitrate even if the arbitration agreement was entered into before" the operative date. In adopting this provision, the state legislature expressly provided that the current Act applies retroactively to all arbitration agreements, thereby superseding the prior statutory regime set forth in former chapter 7.04 RCW.[7] Thus, according to the plain meaning of its express terms, the current Act governs the parties' agree-

---

[7] The legislature specified, however, that the current Arbitration Act "does not apply to any arbitration governed by chapter 7.06 RCW," which provides for mandatory arbitration of some civil actions. RCW 7.04A.030(3). The legislature also provided that the Arbitration Act "does not apply to any arbitration agreement between employers and employees or between employers and associations of employees." RCW 7.04A.030(4). This latter limitation on the reach of the current

ment, even though the lease agreement at issue was entered into in 1997.

¶11 The Arbitration Act further provides that the parties to an arbitration agreement may waive or vary the requirements of the Arbitration Act, except for certain specified provisions. *See* RCW 7.04A.040(1).[8] In this regard, the Act declares that "[t]he parties to an agreement to arbitrate may not waive or vary the requirements of this section or" the requirement that a court, upon proper motion, shall vacate an arbitration award where "[a]n arbitrator exceeded the arbitrator's powers." RCW 7.04A-.040(3), .230(1)(d). The meaning of this statutory language is plain and unambiguous: parties to an arbitration agreement are prohibited from waiving the requirement that a court vacate an arbitration award upon finding that an arbitrator exceeded his or her powers.[9] These statutory provisions clearly render invalid the waiver clause in the parties' arbitration agreement.

---

Act is consistent with the statutory limitation on the applicable scope of the former arbitration statute. *See* former RCW 7.04.010 (1947).

[8] RCW 7.04A.040(1) provides that "[e]xcept as otherwise provided in subsections (2) and (3) of this section, the parties to an agreement to arbitrate or to an arbitration proceeding may waive or vary the requirements of this chapter to the extent permitted by law."

[9] Although we find no ambiguity in the statutory language, we note that the legislative history of the Act confirms our interpretation. The final report on the legislation explained that one of the changes to the previous law is that "certain provisions of the [new Act] may not be waived or varied," including "judicial authority to confirm, vacate, modify, clarify, or correct an award." FINAL B. REP. on Substitute H.B. 1054, at 3, 59th Leg., Reg. Sess. (Wash. 2005). In addition, the comments to section 4(c) of the Uniform Arbitration Act, on which RCW 7.04A.040(3) is based, state that "[t]he judicial . . . vacatur[ ] and modification provisions . . . are not waivable. . . . Parties cannot waive or vary the statutory grounds for vacatur." UNIF. ARBITRATION ACT § 4 cmt. 5.e., (amended 2000), 7 pt. I U.L.A. 19 (2005). Finally, in separate commentary, the reporter for the Uniform Arbitration Act drafting committee explained that section 4(c) of the Uniform Arbitration Act "includes provisions that parties can never waive or vary because they involve fundamental rights without which there could be no fair arbitration process. . . . Thus, parties cannot waive . . . the right to move to confirm or vacate an award." Timothy J. Heinsz, *The Revised Uniform Arbitration Act: An Overview*, 56 DISP. RES. J. 28, 30 (May/July 2001).

## IV

¶12 Optimer next contends that, as so construed, the Arbitration Act unconstitutionally impairs RP Bellevue's obligations under the parties' lease agreement. We disagree.

¶13 The contracts clauses of both the federal and state constitutions prohibit the legislative authority from enacting legislation that impairs existing contractual obligations.[10] However, "[t]he prohibition against any impairment of contracts 'is not an absolute one and is not to be read with literal exactness'." *Tyrpak v. Daniels*, 124 Wn.2d 146, 151, 874 P.2d 1374 (1994) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 428, 54 S. Ct. 231, 78 L. Ed. 413 (1934)). The "prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'" *Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 410, 103 S. Ct. 697, 74 L. Ed. 2d 569 (1983) (quoting *Blaisdell*, 290 U.S. at 434).

¶14 In determining whether legislation unconstitutionally impairs an existing contractual obligation, "[t]he threshold question is 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" *Margola Assocs. v. City of Seattle*, 121 Wn.2d 625, 653, 854 P.2d 23 (1993) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S. Ct. 2716, 57 L. Ed. 2d 727 (1978)). An "impairment is substantial if the com-

---

[10] Article I, section 10 of the United States Constitution provides, "No state shall . . . pass any . . . law impairing the obligation of contracts." Pursuant to article I, section 23 of the Washington Constitution, "[n]o . . . law impairing the obligations of contracts shall ever be passed."

These parallel provisions are substantially similar and are interpreted as having the same effect. *Pierce County v. State*, 159 Wn.2d 16, 27 n.5, 148 P.3d 1002 (2006) (citing *Tyrpak v. Daniels*, 124 Wn.2d 146, 151, 874 P.2d 1374 (1994); *Caritas Servs., Inc. v. Dep't of Soc. & Health Servs.*, 123 Wn.2d 391, 402, 869 P.2d 28 (1994)). In light of this similarity, we may rely on cases construing the federal constitutional provision as persuasive authority in construing the Washington constitutional provision. *Carlstrom v. State*, 103 Wn.2d 391, 394, 694 P.2d 1 (1985) (citing *Ketcham v. King County Med. Serv. Corp.*, 81 Wn.2d 565, 576, 502 P.2d 1197 (1972)).

plaining party relied on the supplanted part of the contract, and contracting parties are generally deemed to have relied on existing state law pertaining to interpretation and enforcement." *Margola Assocs.*, 121 Wn.2d at 653 (citing *Birkenwald Distrib. Co. v. Heublein, Inc.*, 55 Wn. App. 1, 5, 776 P.2d 721 (1989)). Furthermore, "[a] contract is impaired by a statute which alters its terms, imposes new conditions or lessens its value." *Caritas Servs., Inc. v. Dep't of Soc. & Health Servs.*, 123 Wn.2d 391, 404, 869 P.2d 28 (1994). However, legislation does not unconstitutionally impair contractual obligations where the legislation constitutes an exercise of the police power in advancing a legitimate public purpose. *Birkenwald*, 55 Wn. App. at 9. "[I]t is well established that parties cannot complain of an impairment of their contract rights when this impairment comes about through the State acting within its police power for the health, welfare, and good of the general public." *Crane Towing, Inc. v. Gorton*, 89 Wn.2d 161, 174, 570 P.2d 428 (1977). "The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests." *Energy Reserves*, 459 U.S. at 412 (citing *Spannaus*, 438 U.S. at 247-48 & n.20).

¶15 Optimer contends that the Arbitration Act substantially impairs the parties' obligations under the lease agreement. Optimer's argument in support of this contention is premised on the assertion that the agreement's waiver clause was a valid component of the parties' contract. For this proposition, Optimer relies on our decision in *Harvey*.

¶16 In *Harvey*, the represented parties to a medical malpractice suit, after a year and a half of litigation, agreed to resolve their dispute through a private trial. 118 Wn. App. at 317. As part of their private trial agreement, the parties agreed to waive the right to seek judicial review of the private trial decision. *Harvey*, 118 Wn. App. at 319. Stating that there was "no basis on which to conclude that a litigant in a civil case cannot contract away the statutory right to judicial review of an arbitration award," *Harvey*,

118 Wn. App at 320, we held that the waiver provision in the parties' private trial agreement was valid and enforceable and, accordingly, upheld the superior court's order denying Harvey's motion to vacate. *Harvey*, 118 Wn. App. at 323. Thus, at first glance, our decision in *Harvey* might appear to settle the issue of whether the waiver clause in Optimer's lease was valid when it was agreed to. Upon further reflection, however, we conclude otherwise.

¶17 We reach this conclusion in light of our Supreme Court's decision in *Godfrey v. Hartford Casualty Insurance Co.*, 142 Wn.2d 885, 16 P.3d 617 (2001). In particular, we conclude that *Harvey* is not controlling on the initial question of the validity of the waiver clause herein because of the *Godfrey* decision's express disapproval of the holding in *Keith Adams & Associates v. Edwards*, 3 Wn. App. 623, 477 P.2d 36 (1970). *See Godfrey*, 142 Wn.2d at 897 n.8. *Keith Adams* involved a dispute over the apportionment of a real estate sales commission between two realtors who were members of a professional association of realtors. 3 Wn. App. at 624. Incident to their membership, the realtors had agreed to resolve disputes between them through arbitration proceedings governed by the association's bylaws. *Keith Adams*, 3 Wn. App. at 625. These bylaws did "not provide for certain enumerated statutory rights," including the rights to move for vacation, modification, or correction of an arbitration award. *Keith Adams*, 3 Wn. App. at 628. In deciding the case, the court treated those omissions as waivers and held that "[a]ny of the arbitrating parties as an adjunct to the proceedings may waive certain statutory procedures." *Keith Adams*, 3 Wn. App. at 628-29 (citing *Martin-Morris Agency, Inc. v. Mietzner*, 1 Wn. App. 950, 465 P.2d 425 (1970)).[11] However, in *Godfrey*, our Supreme Court made clear that litigants cannot, consistent with the statutory nature of arbitration

---

[11] In *Martin-Morris*, which involved the validity of the waiver of the right to a live arbitration hearing, the court observed that " '[a] right which one may enforce or insist upon, he may also repudiate or relinquish.' " 1 Wn. App. at 954 (quoting *In re Arbitration Puget Sound Bridge & Dredging Co.*, 1 Wn.2d 401, 409, 96 P.2d 257 (1939)).

in Washington, " 'create their own boundaries of review' " of an arbitration award. 142 Wn.2d at 897 (quoting *Barnett v. Hicks*, 119 Wn.2d 151, 161, 829 P.2d 1087 (1992)). In turn, the court expressly disapproved of *Keith Adams* to the extent that it "purport[ed] to permit the parties to an arbitration agreement to fundamentally alter the provisions of chapter 7.04 RCW by agreement." *Godfrey*, 142 Wn.2d at 897 n.8.

¶18 The waiver clause at issue herein is analogous to the waiver provision discussed in *Keith Adams*. Both involve an attempt by the parties to deviate from the statutory arbitration scheme by limiting the right of judicial review prior to the advent of a dispute subject to arbitration. Accordingly, our Supreme Court's express disapproval of this type of arrangement in *Godfrey* is controlling here.[12] Therefore, the waiver clause in Optimer's lease was invalid at its inception.

¶19 We read *Godfrey* as also standing for a more far-reaching proposition: that, in the context of an arbitration agreement entered into before a dispute arises, a provision in the agreement that is at variance with the provisions for judicial review set forth in the governing arbitration statute is void and unenforceable. The court in *Godfrey* emphasized that "arbitration in Washington is exclusively statutory" and that the governing statute did not permit " 'common law arbitration.' " 142 Wn.2d at 893 (quoting *In re Arbitration Puget Sound Bridge & Dredging Co.*, 1 Wn.2d 401, 405, 96 P.2d 257 (1939) and citing *Puget Sound Bridge & Dredging Co. v. Frye*, 142 Wash. 166, 177, 252 P. 546 (1927); *Dickie Mfg. Co. v. Sound Constr. & Eng'g Co.*, 92 Wash. 316, 318, 321, 159 P. 129 (1916)). Hence, because "parties to an arbitration contract are not free to craft a 'common law' arbitration alternative to the Act[,] . . . *any* efforts to alter the fundamental provisions of the Act by agreement are

---

[12] Once our Supreme Court "has decided an issue of state law, that interpretation is binding" on the lower courts. *Hamilton v. Dep't of Labor & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988) (citing *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984)).

inoperative." *Godfrey*, 142 Wn.2d at 896 (emphasis added) (citing *Price v. Farmers Ins. Co. of Wash.*, 133 Wn.2d 490, 946 P.2d 388 (1997); *Boyd v. Davis*, 127 Wn.2d 256, 262, 897 P.2d 1239 (1995); *Barnett*, 119 Wn.2d 151).

¶20 We are aware that our holding in *Harvey* may initially appear to be inconsistent with our present analysis. However, we read *Harvey* as being limited to the situation presented therein, in which the represented parties, well after the commencement of litigation, entered into a private trial agreement containing a waiver of the right to judicial review. 118 Wn. App. at 316-17. Such a situation differs significantly from that presented here and in *Keith Adams*, where the parties entered into arbitration agreements containing waiver provisions long before the advent of any dispute.

¶21 Because *Godfrey* rendered the waiver clause in Optimer's lease invalid and unenforceable, the current Arbitration Act does not impair any of the parties' contractual obligations.[13]

¶22 Even had we concluded otherwise, we would nevertheless conclude that the Act serves a legitimate public purpose and is therefore constitutional. As previously noted, when the State enacts retroactive legislation affecting existing contracts, "[t]he exercise of police power must be 'reasonably necessary in the interest of the health, safety, morals and welfare of the people.' " *Wash. Educ. Ass'n v. State*, 97 Wn.2d 899, 908, 652 P.2d 1347 (1982) (quoting *Ketcham v. King County Med. Serv. Corp.*, 81 Wn.2d 565, 576, 502 P.2d 1197 (1972)). In those circumstances wherein the state is not a party to the contract affected by the challenged legislation, courts generally defer to " 'legislative judgment as to the necessity and reasonableness of a particular measure.' " *Energy Reserves*, 459 U.S. at 413 (quoting *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 22-23, 97 S. Ct. 1505, 52 L. Ed. 2d 92

---

[13] Given this holding, we need not address the parties' other arguments on this issue.

(1977)); *see also Carlstrom v. State*, 103 Wn.2d 391, 394, 694 P.2d 1 (1985). Moreover, "[i]n determining whether this particular legislation tends to promote the welfare of the people of the State of Washington, we must presume that if a conceivable set of facts exists to justify the legislation, then those facts do exist and the legislation was passed with reference to those facts." *State ex rel. Faulk v. CSG Job Ctr.*, 117 Wn.2d 493, 504, 816 P.2d 725 (1991) (citing *State v. Conifer Enters., Inc.*, 82 Wn.2d 94, 97, 508 P.2d 149 (1973)). We "will not 'weigh the wisdom of the particular legislation'." *Faulk*, 117 Wn.2d at 505 (quoting *Petstel, Inc. v. County of King*, 77 Wn.2d 144, 155, 459 P.2d 937 (1969)). Rather, to uphold the legislation, "we must conclude only that there is a rational connection between the purpose of the statute and the method the statute uses to accomplish that purpose." *Faulk*, 117 Wn.2d at 506 (citing *Ketcham*, 81 Wn.2d at 570).

¶23 There is a general public policy favoring arbitration. *Godfrey*, 142 Wn.2d at 892. Promoting arbitration is therefore a legitimate legislative objective. This appears to be the objective of this legislation. Indeed, we are bound to assume that it is. *Faulk*, 117 Wn.2d at 504.

¶24 A specific declaration of legislative purpose is not found in the scant legislative history extant. But the absence of such legislative history is unremarkable, considering that the Act follows the Uniform Arbitration Act almost verbatim.

¶25 In light of the origins of the current Act, we consider the comments to the Uniform Arbitration Act in assessing the reasonableness of the methods that the Act employs. With respect to the retroactive application of the uniform act, the comments explain that "[t]he need for uniform application of arbitration laws and to avoid two sets of rules for arbitration agreements that are of a long-term duration are legitimate rationales for retroactive application." UNIF. ARBITRATION ACT § 3 cmt. 5 (amended 2000), 7 pt. I U.L.A. 15 (2005). Further, of great concern to the Uniform Law Commission were inequities in arbitration agreements be-

tween parties occupying different bargaining positions at the time of contract formation. UNIF. ARBITRATION ACT § 6 cmt. 7, 7 pt. I U.L.A. 26. As one commentator has observed, the nonwaiveability provision of the uniform act "incorporates the basic philosophy of party autonomy in determining arbitration agreements, but it places limits on the parties to insure inherent fairness in the arbitration process." Timothy J. Heinsz, *The Revised Uniform Arbitration Act: An Overview*, 56 DISP. RES. J. 28, 30 (May/July 2001).

¶26 The disputed provisions of the Arbitration Act are thus reasonably necessary to serve a legitimate public purpose. Accordingly, no constitutional infirmity exists.[14]

## V

¶27 In summary, according due deference to the legislature's decision to enact the Arbitration Act, we conclude that the statute serves a legitimate public purpose. Arbitration has been exclusively statutory in Washington for over 100 years. The legislature has authority to regulate activity in this field. The retroactive application of the current Act to preexisting arbitration agreements does not violate the contracts clauses of either the federal or state constitutions. Because the Act invalidates the waiver clause here at issue, the superior court erred by ruling otherwise.

## VI

¶28 Finally, both parties request an award of attorney fees and costs on appeal. Neither party, however, is

---

[14] We note that, although the Uniform Arbitration Act (2000) has been adopted in 13 other jurisdictions, Optimer has not cited a single authority even questioning its constitutionality. In addition to Washington, the following jurisdictions have adopted the Uniform Arbitration Act (2000): Alaska, ALASKA STAT. §§ 09.43.300-.595; Colorado, COLO. REV. STAT. §§ 13-22-201 to -230; The District of Columbia, D.C. CODE §§ 16-4401 to -4432; Hawaii, HAW. REV. STAT. §§ 658A-1 to -29; Nevada, NEV. REV. STAT. §§ 38.206-.248; New Jersey, N.J. STAT. ANN. §§ 2A:23B-1 to 23B-32; New Mexico, N.M. STAT. §§ 44-7A-1 to -32; North Carolina, N.C. GEN. STAT. §§ 1-569.1-.31; North Dakota, N.D. CENT. CODE §§ 32-29.3-01 to .3-29; Oklahoma, OKLA. STAT. title 12 §§ 1851-1881; Oregon, OR. REV. STAT. §§ 36.600-.740; Utah, UTAH CODE ANN. §§ 78B-11-101 to -131.

entitled to fees on appeal because, as yet, there is no prevailing party on RP Bellevue's motion to vacate. Therefore, any award of fees would be precipitous. *See Home Realty Lynnwood, Inc. v. Walsh*, 146 Wn. App. 231, 242, 189 P.3d 253 (2008).

¶29 Reversed and remanded.

APPELWICK and LEACH, JJ., concur.

Review granted at 168 Wn.2d 1018 (2010).